AETNA FREIGHT LINES, Inc., et al., Appellants,

v.

R. C. TWAY COMPANY, Inc., d/b/a Kentucky Manufacturing Company, Appellee.

Court of Appeals of Kentucky.

May 18, 1956.

As Modified on Denial of Rehearing Oct. 26, 1956.

Rehearing Denied March 1, 1957.

Stanley B. Mayer, Mayer, Cooper & Keil, Louisville, for appellants.

Charles I. Dawson, Rucker Todd, Bullitt, Dawson & Tarrant, Thomas S. Dawson, Louisville, for appellee.

SIMS, Judge.

Appellants, Paul Fellabaum and Aetna Freight Lines, Inc. (hereinafter referred to as Aetna), seek to set aside a summary judgment entered in favor of appellee, R. C. Tway Company, Inc. (hereinafter referred to as Tway).

Fellabaum purchased a tractor trailer (a "train" consisting of two trailers connected by a drawbar) from an Ohio dealer who had bought the trailer from Tway, the manufacturer. Fellabaum leased the "train" to Aetna, a contract carrier operating in Ohio and adjoining states. On June 11, 1949, after it had been used approximately four months and had run some 17,000 miles, the "train" was involved in an accident in Ohio which resulted when the drawbar broke, permitting the "train" to cross the road and collide with an approaching car.

Three passengers in the car were killed and two were seriously injured. Shortly after the accident, five suits were filed in Ohio against Fellabaum, Aetna, and Harr, the driver of the trailer,—three by the administrators of the estates of the deceased, and two by the injured persons.

At the time of the accident, the "train" was insured by the Continental Casualty Company. When it appeared desirable settlements of the Ohio suits were possible, Continental entered into two "loan agree-

ments" with Fellabaum and Aetna, whereby they borrowed from it the money required to settle the actions. One agreement was for the sum of $27,000, the amount of settlement in the suits by the two injured passengers. The second loan was for $19,500, the sum agreed upon by the administrators of the deceased passengers in settlement of their suits. Thereafter, the five Ohio suits were settled by appellants with the funds "borrowed" from Continental.

In January, 1951, appellants filed an action against Tway in the Jefferson Circuit Court to recover the $27,000 which they had paid to the parties injured in the Ohio accident. In August, 1952, a second action was filed to recover the $19,500 which had been paid to the estates of the deceased passengers. By agreement of parties, the two actions were tried together.

In an amended answer filed in April, 1953, Tway raised the defense that Fellabaum and Aetna were not the real parties in interest, since Continental had become subrogated to their rights against Tway. The defense was based on the premise that the "loan agreements" were actually payments of Continental's liability under its insurance policy.

After a pre-trial conference, the judge delivered a written opinion stating the actions had been brought by the real parties in interest. The cases proceeded to trial, but after five days of testimony, the judge announced he was reversing his decision on the question of the real parties in interest. The jury was dismissed and the case continued. Then Tway entered a motion for summary judgment, which was sustained on the ground that Fellabaum and Aetna were not the real parties in interest. The appeal is from that judgment.

Appellants urge that under the terms of the loan agreements Continental did not make absolute payments, and thereby avoided subrogation to the rights of appellants, hence they are the real parties in interest. Appellee insists the trial court's action was proper, on the ground announced; but, in any event, the summary judgment should be sustained on three other grounds which will be hereinafter discussed.

The loan agreements executed between Continental and appellants stated the parties thereto believed Tway to be primarily liable for the damages resulting from the Ohio accident; that Tway had refused to accept responsibility therefor and had refused to join in defending the suits. The agreements stated a settlement of those actions was desired, and the necessary sum to accomplish that end was being loaned to Fellabaum and Aetna. In consideration of the loan, the latter agreed to institute an action against Tway for indemnification of the sums paid in settlements of the Ohio suits. Continental agreed to bear the expense of the suit against Tway and to direct that litigation through counsel of its own choice. It was agreed any sums recovered in the suits against Tway would be paid to Continental in full discharge of the loan; but if the actions against Tway were unsuccessful, the loans would become null and void and regarded as fully satisfied. The agreements did not provide for interest on the loans.

The loan agreements were executed in Ohio. The parties agree that under Ohio law such contracts are treated as payments rather than loans, so as to afford a party sued by the insured alone a defense under the statute requiring that every action be prosecuted in the name of the real party in interest. See Cleveland Paint & Color Co. v. Bauer Manufacturing Co., 155 Ohio St. 17, 97 N.E.2d 545: also annotations 157 A.L.R. 1261. Nevertheless, appellants insist the question of who is the real party in interest, is a matter of procedure; hence it is controlled by the law of the forum—which in this case is Kentucky.

With this contention we agree. Matters of procedure are determined by the law of the forum, and the question of who must sue or be sued is a procedural question. See 11 Am.Jur., "Conflict of Laws," § 187, p. 500; Restatement, Conflict of Laws, § 588. Although the validity of a contract, or the extent or nature of a cause of action

based thereon, may be controlled by the Conflict Rule relating to contracts, the question of who must bring a suit on the contract is a procedural matter to be decided by the law of the forum.

In State Farm Mutual Automobile Insurance Co. v. Hall, 292 Ky. 22, 165 S. W.2d 838, we held that a similar "loan agreement" constituted a loan rather than a payment. The insurance policy pursuant to which the loan in that case was made provided the insurance was to be "excess insurance over any other valid and collectible insurance available to the insured * * *." The loan was made on condition it should be repaid only to the extent of recovery from the insured's other insurer. The loan in the instant case was based upon a similar condition, although the parties anticipated recovery from the manufacturer, rather than from another insurance company. The insurance policy in this case does not contain a provision similar to that in the Hall case; but, even in the absence of an express condition, the insurer would be liable only for actual damages of the insured, therefore would not be required to pay damages which the insured subsequently recovered from third parties. In this respect, the loan executed by Continental was not a payment of an unconditional liability under the policy.

Furthermore, in the Hall case we said the intention of the parties to the "loan agreement" determines whether the transaction is a loan or a payment. There can be no doubt in the case under consideration that the parties intended to execute a loan rather than a payment. Indeed, the agreement expressly stated the transaction was not a payment of any obligation which Continental had under its insurance policy, but merely a loan in consideration of the promises made by Fellabaum and Aetna.

While it is clear that the difference between a loan of the type under consideration and an absolute payment is mere fiction, that ground alone is insufficient to declare the transaction a nullity. Rather, we will look to the purpose of the fiction created by the parties to the transaction.

It is clear the purpose of the loan agreement was to insulate Continental from a prejudice which juries frequently apply against insurance companies. Our courts have long been aware of this prejudice, as exemplified by our decisions in personal injury cases where the element of insurance has been improperly injected.

The purpose of our trial procedure is to secure justice in each case. There is no room in our system of jurisprudence for the operation of prejudices, whether they be against insurance companies, manufacturers, or in favor of homeless children. Hence, we cannot say an agreement which is intended to avoid the operation of an undue prejudice is against public policy. It may be urged that such agreements defeat the policy adopted in our "real party in interest" provision of the Civil Rules of Procedure, rule 17.01; but the fallacy of the argument lies in the fact that such provisions traditionally were intended to enable additional parties to sue in their own name, rather than to restrict the group of persons who could sue.

For these reasons, we think the trial judge improperly entered summary judgment for Tway on the ground that appellants were not the real parties in interest. Appellee insists, however, the judgment should be affirmed because: (1) appellants neither alleged nor proved Tway had knowledge that the trailer, due to negligent manufacture, was an imminently dangerour instrumentality; (2) appellants neither alleged nor proved joint negligence between themselves and Tway; and (3) the period of successful use of the trailer conclusively rebuts any claim it was an imminently dangerous instrumentality.

The first and third contentions are based upon the premise that Tway's liability, if any, is determined by the existing Kentucky rule on manufacturer's liability. It is sufficient to say that both contentions present questions of evidence, which will be for the jury on a retrial of the case. Furthermore, since Tway's liability is based on tort, such liability will be controlled by the law of the place where

the tort occurred. Where the alleged negligence occurs in one state, and the resulting injury in another, the law of the latter state controls matters of substantive law. See 11 Am.Jur., "Conflict of Laws," § 182, p. 490; Restatement, Conflict of Laws, § 377. Hence the Ohio rule on manufacturer's liability will apply on a retrial of the case.

■■ The second contention urged by Tway is, in substance, that appellants failed to show a right to indemnity because they neither alleged nor proved there was any basis for legal liability on their part to the injured claimants with whom they settled, or that negligence on their part furnishing the basis for liability to the injured claimants was of a secondary character in relation to the alleged primary negligence of Tway. This second ground was asserted, in not too clear language, in Tway's motion for summary judgment, and was overruled by the trial court. It appears from an examination of the record the motion for summary judgment was argued and considered almost exclusively on the question of real party in interest, and little if any was addressed to this second ground, which Tway now so earnestly argues. Under these circumstances we think that upon remand of the case Tway should be permitted to renew his motion for summary judgment on the ground that appellants were not liable to the victims of the accident. Unless the plaintiffs then, by way of amended pleadings and supporting matter permitted under CR 56.03, are able to show something more than is presently in the record to indicate a material issue of fact on the question of their legal liability to the injured claimants with whom they settled, and whether their negligence giving rise to such liability was secondary and passive, in relation to the primary and active negligence of Tway, the court will sustain the motion for summary judgment. See Globe Indemnity Co. v. Schmitt, 142 Ohio St. 595, 53 N.E.2d 790.

For the reasons stated, the summary judgment entered by the trial court is reversed ■■ .

for proceedings consistent with this opinion.

CAMMACK, Judge (dissenting).

I think the issue of who must sue on the Ohio contract is essentially a question of the effect to be given the contract, and therefore should be controlled by Ohio law relating to these "loan agreements."