DAVID GREGORY HERRING v. WILLIAM TAFT JACKSON.

(Filed 1 November, 1961.)

**1. Torts § 4—**

   The common law rule that there is no right of contribution between joint tort-feasors has been modified in this State so as to provide for enforcement of contribution as between joint tort-feasors in the manner and to the extent provided by G.S. 1-240.

**2. Same—**

   An insurer paying the judgment obtained by the injured party against one tort-feasor has no right of action to enforce contribution against the other tort-feasor, and in an action for contribution in the name of the of a "loan" to the injured party payable only in the event and to the extent of any recovery which the injured party may obtain against the other tort-feasor, and in an action for contribution in the name of the injured party, maintained solely in the interest of the insurer, the injured party is not a real party in interest. G.S. 1-57.

APPEAL by plaintiff from *Stevens, J.,* June Civil Term, 1961, of SAMPSON.

Civil action, based on G.S. 1-240, for contribution.

The action is grounded on allegations that plaintiff and defendant, as joint tort-feasors, proximately caused personal injuries sustained by one Curtis Jackson; that plaintiff, in an action brought against him by Curtis Jackson, paid $8,750.00 in satisfaction of the (consent) judgment entered therein; and that plaintiff is entitled to recover from defendant one-half of the amount so paid, to wit, $4,375.00, plus interest.

Answering, defendant alleged, in substance, that the $8,750.00 payment was not made by plaintiff but was made by plaintiff's liability insurance carrier in discharge of its legal liability to plaintiff under its policy, and that plaintiff is not the real party in interest and cannot prosecute the action.

The parties waived jury trial and agreed the court should hear the case "on the admissions in the pleadings and an agreed statement of facts and decide all issues of fact and law, making such findings of fact and conclusions of law as the Court might deem necessary and proper, and enter judgment thereon."

The agreed statement of facts, referred to in said recital, is quoted below:

"I. On February 23, 1958, at approximately 12:15 o'clock A.M., the defendant William Taft Jackson was operating his 1954 Ford Tudor automobile in a southerly direction on U.S. Highway #301 approximately one-quarter of a mile north of the city limits of

Dunn, Harnett County, North Carolina; that as the defendant was proceeding southward on Highway #301 his car became disabled upon the paved portion of the highway by reason of coming into collision with the rear end of another southbound vehicle; that thereafter the plaintiff David Gregory Herring, who was operating his 1957 Ford automobile southward along Highway #301, approached the defendant's disabled automobile from the rear and ran into it thereby knocking the defendant's 1954 Ford automobile against one, Curtis Jackson, who was standing on the west shoulder of the highway, seriously and permanently injuring the said Curtis Jackson.

"II. Thereafter, and on February 26, 1958, Curtis Jackson instituted a civil action against David Gregory Herring in the Superior Court of Harnett County, North Carolina, for the recovery of $50,000 in damages for personal injuries alleged to have been sustained by him as a result of the alleged negligence of Herring in colliding with the automobile of William Taft Jackson and causing it in turn to collide with Curtis Jackson.

"III. At the time of said accident, Nationwide Mutual Insurance Company (hereinafter called Nationwide) had issued a policy of automobile liability insurance to David Gregory Herring, a copy of which policy is hereto attached and marked as Defendant's Exhibit #1. Subject to its terms and conditions the policy obligated Nationwide to pay on behalf of David Gregory Herring as insured all sums which he should become legally obligated to pay as damages because of bodily injury sustained by any person arising out of the ownership, maintenance or use of Herring's 1957 Ford automobile previously referred to, but not in excess of $10,000 for injuries to one person. Another insuring agreement obligated Nationwide to defend any suit alleging such bodily injury, but gave it the right to make such investigation and settlement of any claim or suit as it might deem expedient. One of the conditions of the policy was that no action should lie against Nationwide 'until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.'

"IV. When David Gregory Herring was served with the complaint and summons in the action brought against him by Curtis Jackson, he delivered the suit papers to Nationwide which thereupon retained counsel and entered upon a defense of the action pursuant to the aforesaid insurance policy. Nationwide notified Herring of the retention of an attorney in his behalf; requested

his cooperation with said attorney and also notified him that he had been sued for an amount in excess of the limits of the policy and informed him that should he so desire, he could retain an attorney to represent him with respect to his liability in excess of that for which the policy afforded protection. Herring did not retain personal counsel in this connection. Nationwide Insurance Company had full control of the Curtis Jackson litigation from the defendant's aspect and the attorney retained as mentioned above prepared an answer which was verified by David Gregory Herring, and it was filed in said cause. In the answer thus filed there was no cross action asserted against William Taft Jackson for any rights of contribution that may have existed.

"V. On April 15, 1958, the defendant herein, William Taft Jackson, instituted an action against David Gregory Herring, the plaintiff herein, in the Superior Court of Sampson County, North Carolina, for the recovery of damages for personal injuries (but not property damage) alleged to have been sustained by William Taft Jackson as a result of the collision between Herring's automobile and the automobile of William Taft Jackson on February 23, 1958, it being the same motor vehicle collision which was the subject of the action instituted by Curtis Jackson against Herring.

"VI. True copies of the pleadings in the two original actions of Curtis Jackson and William Taft Jackson, respectively, against David Gregory Herring are attached as exhibits to the complaint in this action and by this reference are made a part of this agreed statement of facts.

"VII. When the CURTIS JACKSON action came on for trial at the April 1959 Civil Term of Harnett County Superior Court, the defendant, David Gregory Herring, and his counsel, retained as aforesaid by Nationwide, being convinced that the action could not be successfully defended, and being further convinced that trial of the action would in all probability result in a verdict and judgment in favor of Curtis Jackson and against David Gregory Herring in the amount of at least $15,000 entered into negotiations for the settlement of said action and David Gregory Herring made demand upon Nationwide to settle the case of Curtis Jackson if settlement could be reached within limits of the liability coverage afforded by the aforementioned policy of liability insurance. Negotiations conducted by Nationwide's attorney and the attorney for Curtis Jackson, resulted in a proposal by Curtis Jackson to accept the sum of $8,750 in settlement of his action.

"During the course of the negotiation of the settlement of the

Curtis Jackson case, the attorney retained by the Nationwide and defending David Gregory Herring, consulted with Clyde L. Stancil, Claims Attorney for Nationwide, who approved the amount of the suggested settlement and authorized the attorney to agree to pay $8,750 in settlement of said case, provided such rights as might exist to recover contribution from William Taft Jackson as joint tort-feasor pursuant to the provisions of G.S. 1-240 might still be preserved.

"In an effort to preserve such rights it was agreed that Nationwide would issue its draft in amount of $8,750 to its insured, David Gregory Herring, who would in turn endorse the draft to the Clerk of the Superior Court of Harnett County in payment of the judgment in the Curtis Jackson case, and that coincident with this transaction, David Gregory Herring would execute an instrument described as a 'loan receipt,' a copy of which is hereto attached and marked Plaintiff's Exhibit 1.

"VIII. This was agreeable with Herring, and accordingly a consent judgment was entered at the April 1959 Civil Term of Harnett County Superior Court under the terms of which it was adjudged that Curtis Jackson have and recover of David Gregory Herring the sum of $8,750, together with the costs of the action to be taxed. A copy of said judgment is attached to plaintiff's complaint in this action and is marked Exhibit C and by this reference is made a part hereof. Nationwide then issued its draft in the amount of $8,750 to David Gregory Herring. The above mentioned draft was delivered to the attorney retained by Nationwide and representing David Gregory Herring, who in turn delivered it to David Gregory Herring, who endorsed said draft to the Clerk of the Superior Court of Harnett County in satisfaction of the judgment entered in the case of Curtis Jackson by and through his next friend against David Gregory Herring. The draft was then turned over to the attorney representing Curtis Jackson who delivered it to the Office of the Clerk of the Superior Court of Harnett County in satisfaction of said judgment. A copy of said draft is hereto attached and marked as Defendant's Exhibit #2 and it referred to Policy No. 61-41-849, being the policy issued by Nationwide to David Gregory Herring, and in full force and effect at the time of the accident in which Curtis Jackson was injured, and further, referred and was charged to the claim number assigned by Nationwide to the claim of Curtis Jackson, and stated said claimant's name and the date of this accident. It was fully understood and agreed that said draft was to be used in satisfying

the judgment entered in favor of Curtis Jackson and through his next friend.

"IX. Coincident with the delivery of said $8,750 draft to David Gregory Herring by Nationwide he executed a loan receipt agreement in favor of Nationwide, a true copy of which is attached to the plaintiff's reply in this action and by this reference made a part hereof. It was the purpose of the employment of this procedure to enable a subsequent action to be maintained for contribution in the name of David Gregory Herring and it was understood and agreed that such action would be under the complete direction and control of Nationwide.

"X. The court costs in the CURTIS JACKSON case were paid by Nationwide.

"XI. That the injuries sustained by Curtis Jackson in the collision in question were substantially as alleged in paragraph 7 of his complaint and paragraph 18 of the complaint filed in this action, and the amount paid in settlement of the CURTIS JACKSON action, to wit, $8,750, was fair and reasonable.

"XII. The action of 'William Taft Jackson against David Gregory Herring,' subsequently came on for trial at the June 1960 Civil Term of Sampson County Superior Court, during the course of which trial issues were submitted to and answered by the jury against William Taft Jackson and in favor of David Gregory Herring on his counterclaim. A copy of said issues with the answers of the jury thereto and a copy of the plaintiff's complaint in this action and marked Exhibits H and I and by this reference are made a part hereof.

"XIII. William Taft Jackson did not perfect an appeal from said judgment but the same was satisfied by or on his behalf and an entry of satisfaction was made on the judgment docket record in the Office of the Clerk of the Superior Court of Sampson County.

"XIV. On February 21, 1961, this action was brought in the Superior Court of Sampson County in the name of David Gregory Herring, represented by an attorney retained by Nationwide, seeking contribution from the defendant William Taft Jackson, as an alleged joint tort-feasor, under the provisions of G.S. 1-240.

"XV. The recovery sought in this action for contribution would eventually inure to the benefit of Nationwide and none of said recovery would benefit David Gregory Herring except for use in discharging the 'loan'; and should the plaintiff fail to effect a recovery, he would suffer no loss thereby."

The "Loan Receipt," executed by plaintiff under date of May 16, 1959, is quoted below:

"RECEIVED from Nationwide Mutual Insurance Company, hereinafter referred to as 'Company' the sum of Eight Thousand Seven Hundred Fifty and no/100 ($8,750.00) Dollars as a loan, without interest, repayable only in the event and to the extent of any net recovery which may be made by the undersigned, David G. Herring, Jr., from any person, firm, or corporation whose negligence may have proximately caused or contributed to injuries received by Curtis Jackson in an accident which occurred near Dunn, North Carolina, on February 23, 1958, as a result of which an action was filed in the Superior Court of Harnett County, North Carolina, entitled 'Curtis Jackson, by his next Friend, O. B. Jackson, vs. David Herring, Jr.' As security for such repayment the undersigned hereby pledges to Company all of his claims against said person, firm or corporation, and more specifically against one William Taft Jackson and his insurance carrier, and any recovery which may be made on said claim, for contribution only.

"The undersigned, David G. Herring, Jr., covenants and agrees to cooperate fully with said Company and to allow suit to be commenced in his name, if necessary, to the end that all rights of contribution which he may now have or hereafter acquire, against any party whose negligence proximately caused and contributed to the injuries and damages sued for by Curtis Jackson in the above entitled action may be enforced. It is understood, however, that such action shall be without expense to the undersigned except the duty of the undersigned to attend court and give evidence if required to do so. It is further understood that all legal proceedings are to be under the exclusive direction and control of company."

Judgment dismissing the action, based on findings of fact and conclusions of law set forth therein, was entered.

Plaintiff excepted and appealed.

*Dupree, Weaver, Horton & Cockman for plaintiff, appellant.*

*Jordan, Wright, Henson & Nichols and William D. Caffrey for defendant, appellee.*

BOBBITT, J. It is unnecessary to set forth with particularity the findings of fact and conclusions of law challenged by plaintiff's exceptions. In gist, the court found and held that the payment by Nation-

wide's draft of Curtis Jackson's judgment against plaintiff and the execution by plaintiff of the "Loan Receipt" was not, in fact, an actual loan by Nationwide to plaintiff but "was a subterfuge device employed by Nationwide, paying that which it was obligated to pay, in an effort to circumvent and subvert the provisions of North Carolina G.S. 1-57 and G.S. 1-240."

The "Loan Receipt," in express terms, obligates plaintiff to cooperate with Nationwide "to the end that all rights of contribution which he may now have or hereafter acquire, against any party whose negligence proximately caused and contributed to the injuries and damages sued for by Curtis Jackson in the above entitled action may be enforced." Plaintiff has nothing to gain or lose by the prosecution of this action. While instituted and prosecuted in plaintiff's name, this action was instituted and is prosecuted by Nationwide solely for Nationwide's benefit. The purpose of the "Loan Receipt" agreement, as set forth therein, is to confer upon Nationwide a right to enforce contribution. In our view, the crucial question is whether, under the agreed facts, *a* right of action for contribution now exists.

Where insured *property* is destroyed or damaged by the tortious act of a third party, and the insurance company pays its insured, the owner, the *full amount* of his loss, the insurance company is subrogated to the owner's (indivisible) cause of action against such third person. In such case, the insurance company, as the real party in interest under G.S. 1-57, may maintain such action in its name and for its benefit. *Burgess v. Trevathan,* 236 N.C. 157, 72 S.E. 2d 231; *Smith v. Pate,* 246 N.C. 63, 97 S.E. 2d 457; *Insurance Co. v Moore,* 250 N.C. 351, 108 S.E. 2d 618.

In cases involving loss of or damage to insured property, the owner's cause of action, if any, must be predicated upon allegations and findings that the tortious conduct of the third party was the proximate cause of such loss or damage. Thus, where an insured sustains collision damage, neither the insured nor the insurance company can recover against the third party if the insured's negligence was a proximate cause of the collision. In such cases, the right to recover presupposes the insured *was not* a joint tort-feasor. Here, automobile liability insurance, not property insurance, is involved.

At common law, as between joint tort-feasors, there was no right of contribution. *Hayes v. Wilmington,* 239 N.C. 238, 242, 79 S.E. 2d 792, and cases cited. See Comment Note, "Contribution between negligent tortfeasors at common law," 60 A.L.R. 2d 1366. In this jurisdiction, the common law rule was modified by G.S. 1-240 so as to provide for enforcement of contribution *as between joint tort-feasors* in accordance with its provisions.

If Herring and William Taft Jackson, as joint tort-feasors, proximately caused Curtis Jackson's injuries, Herring, had he discharged his legal liability to Curtis Jackson by use of his own funds, could have maintained an action against William Taft Jackson for contribution. However, under G.S. 1-240, as construed by this Court, this rule, as stated by *Higgins, J.,* is firmly established: "The insurance carrier who pays a joint tort-feasor's obligations to the injured party cannot force contribution from other tort-feasors." *Squires v. Sorahan,* 252 N.C. 589, 591, 114 S.E. 2d 277, and cases cited.

We are advertent to the diversity of decisions in other jurisdictions. In many jurisdictions, the common law rule is retained in its original vigor. 60 A.L.R. 2d 1373 *et seq.* In other jurisdictions, it has been modified by court decisions so as to permit contribution as between negligent joint tort-feasors. 60 A.L.R. 2d 1377. In other jurisdictions, including North Carolina, it has been modified by statute. 60 A.L.R. 2d 1368, Note 2.

In some jurisdictions, where the common law rule has been modified, either by court decisions or by statute, it is held that an insurance carrier of one joint tort-feasor, after having made settlement with the injured party, has the right to maintain an action for contribution against the other tort-feasor(s). *Leitner v. Hawkins* (Ky.), 223 S.W. 2d 988; *Underwriters at Lloyds v. Smith* (Minn.), 208 N.W. 13; *Western Casualty & S. Co. v. Milwaukee Gen. Const. Co.* (Wis.), 251 N.W. 491; *Hawkeye-Security Ins. Co. v. Lowe Construction Co.* (Iowa), 99 N.W. 2d 421. Suffice to say, these decisions are in direct conflict with the established rule in this jurisdiction.

In *Blair v. Espeland* (Minn.), 43 N.W. 2d 274, and in *Aetna Freight Lines v. R. C. Tway Company* (Ky.), 298 S.W. 2d 293, cited and stressed by plaintiff, it was held that the insured was entitled to prosecute the action for the benefit of the insurer notwithstanding the insured's legal liability to the injured party had been fully satisfied with funds paid by the insurer under a "loan receipt" agreement such as that here involved.

In *Blair,* the factual situation was quite similar to that here considered. These excerpts from the opinion are significant: "The intent of the parties to the 'loan receipt' agreement is clear. It was entered into because it enables the insured to bring the action in his own name and permits the insurer, who will benefit if a recovery is had, to remain hidden from view." Again: ". . . for strategic reasons, plaintiff's insurer prefers not to have its name appear as a party litigant, . . ." Again: "The arrangement between plaintiff and his insurer cannot affect defendant financially. Therefore, he need not be concerned. There is no danger of more than one recovery. There seems,

therefore, to be no legal basis for defendant's objections to the 'loan receipt' agreement. Where defendant is not legally affected, he cannot interfere with the freedom of plaintiff and his insurer to contract, through the device of a 'loan receipt' agreement, that the title to the cause of action against a wrongdoer reside wherever they determine by their agreement."

In *Aetna Freight Lines,* the factual situation was similar to that here considered with one exception, namely, the action was not to enforce contribution but was to recover the full amount on the ground defendant was primarily liable for the payment thereof. This excerpt from the opinion is significant: "While it is clear that the difference between a loan of the type under consideration and an absolute payment is mere fiction, that ground alone is insufficient to declare the transaction a nullity. Rather, we will look to *the purpose of the fiction* created by the parties to the transaction. It is clear the purpose of the loan agreement was to insulate Continental from a prejudice which juries frequently apply against insurance companies." (Our italics)

The "loan receipt" agreement is referred to in *Blair* as a "device" and in *Aetna Freight Lines* as a "mere fiction." Decision is based on the grounds (1) that the defendant is not legally affected, and (2) that the sole purpose of the "device" or "mere fiction" is to avoid prejudice that might result if the action were prosecuted by the insurer in its own name.

In Minnesota *(Blair)* and in Kentucky *(Aetna Freight Lines),* the defendant would not be legally (adversely) affected by the "device" or "mere fiction." If it had made direct payment, the insurer could have maintained the action for contribution. The "device" or "mere fiction" simply enabled the insurer to prosecute the action in the name of its insured and thereby avoid possible prejudice.

In North Carolina, the situation is quite different. Here, if it had made direct payment of Curtis Jackson's judgment against Herring, Nationwide could not maintain this action against William Taft Jackson for contribution. Plaintiff, in express terms, purported to confer upon Nationwide a right to enforce contribution. Obviously, if this were permitted, defendant would be legally (adversely) affected. The right to contribution, if any, must be based on G.S. 1-240; and under our decisions Nationwide has no right to contribution. *Squires v. Sorahan, supra,* and cases cited. Manifestly, plaintiff cannot, by the "device" or "mere fiction" of a "Loan Receipt" agreement or otherwise, confer upon Nationwide a right to contribution when such right is denied by the decisions of this Court.

It should be noted that the ground on which this decision is based is absent in actions brought in the name of an insured, pursuant to

a "loan receipt" agreement, to recover for damage to the insured's property by fire, collision or like casualty, allegedly caused by the tortious act of a third party.

The conclusion reached is that plaintiff is not *a* real party in interest. G.S. 1-57. The action was instituted and is prosecuted solely for the benefit of Nationwide. Since Nationwide has no right to prosecute an action for contribution, such action may not be prosecuted for its sole benefit by plaintiff or in plaintiff's name. For these reasons, the judgment of the court below is affirmed.

Affirmed.