**124**

BONDED ELEVATOR, INC., Movant,

v.

FIRST NATIONAL BANK OF
LOUISVILLE, Respondent.

Supreme Court of Kentucky.

Dec. 22, 1983.

Rehearing Denied Dec. 20, 1984.

Richard M. Trautwein, Robert W. Bishop, Barnett & Alagia, Louisville, for movant.

Winfrey T. Blackburn, Jr., W. Robinson Beard, James D. Boyer, Stites & Harbison, Louisville, for respondent.

VANCE, Justice.

The questions presented by this appeal are (1) whether summary judgment was properly entered against Bonded Elevator, Inc., in favor of First National Bank of Louisville, and (2) whether the Bank is precluded from seeking satisfaction of the judgment from Bonded to the extent that Bank has received payment thereon from a third party under an unusual loan-receipt transaction.

Bonded Elevator, Inc., a Kentucky corporation, engaged in a grain elevator business in Madisonville and Calvert City, Kentucky. It sought a line of credit from First National Bank of Louisville.

To secure the loan a field warehousing arrangement was entered into whereby Bonded designated S.L.T. Corporation as an independent warehouseman to receive grain from Bonded and to issue a warehouse receipt to the Bank certifying the receipt of the grain. The Bank would then lend Bonded a stipulated percentage of the value of the grain.

Bonded leased to S.L.T. the grain storage facility at Madisonville, and S.L.T. hired former employees of Bonded to certify the receipts of grain.

In some manner not fully explained by this record, the warehouse receipts issued by S.L.T. greatly exceeded the amount of grain actually held in storage by S.L.T. The Bank demanded payment of its note from Bonded and demanded delivery of the collateral from S.L.T. Neither was able to comply, and Bank therefore sued Bonded upon the note it had executed and sued S.L.T. for breach of its obligations in connection with the warehouse receipts.

Bonded and S.L.T. each filed cross-claims against the other seeking to recover any amount which either of them might be required to pay Bank. Bonded also asserted as a defense against Bank that the loss was caused by the negligence of Bank, its agents, and employees.

Separate summary judgments were entered in favor of Bank against S.L.T. and against Bonded in an identical amount of $3,079,086.92. The cross-claims of Bonded and S.L.T. against each other have not yet been disposed of. On June 30, 1980, Bonded appealed to the Court of Appeals.

Thereafter, on December 12, 1980, S.L.T., and its insurance carriers entered into a Loan Receipt Agreement whereby the insurance carrier loaned S.L.T. the sum of $2,800,000.00, interest free, to be repaid only in the event and to the extent of any recovery which S.L.T. might make from Bonded on its cross-claim or from any other person arising from the Promissory Notes pursuant to a Loan Receipt and Agreement entered into between S.L.T. and the Bank.

S.L.T. pledged to the insurance carriers all of its claims against all parties to the action.

S.L.T. then, on December 18, 1980, loaned to Bank the sum of $2,800,000.00, interest free, to be repaid only in the event and to the extent of any recovery which Bank might obtain from Bonded on the promissory notes or from other persons arising out of these transactions.

Bank agreed to, and did, dismiss with prejudice its claims against S.L.T. but reserved its claims against Bonded. Bank agreed to repay S.L.T. out of any recovery from Bonded or others, up to the amount of $2,800,000.00.

Bank further agreed not to settle its claim against Bonded without consent of S.L.T., to cooperate with S.L.T. in Bank's claim against Bonded and, if necessary, to commence and to prosecute diligently other legal proceedings in Bank's name against persons who may be liable on Bank's claim, all such proceedings to be prosecuted, settled or dismissed, at the risk and expense (including attorney fees) of S.L.T. and under S.L.T.'s exclusive direction, management, and control. Bank appointed S.L.T. its agent and attorney-in-fact with irrevocable power to collect on behalf of Bank upon any claim which Bank had against Bonded at the risk and expense of S.L.T.

Bonded was not a party to, nor aware of, these loan receipts and agreements at the time of their execution. Upon learning of them, Bonded moved to set aside and vacate the judgment of Bank against Bonded upon the ground that the payment by S.L.T. to Bank satisfied the judgment. This motion was denied and Bonded prosecuted a second appeal to the Court of Appeals. The Court of Appeals affirmed each of the judgments appealed from.

The entry of summary judgment against Bonded in favor of Bank was proper. It is true, as contended by Bonded, that it asserted as a defense to Bank's claim that the loss to Bank was caused by Bank's own negligence in permitting impairment of the collateral and also that S.L.T. was the agent of Bank and any negligence of S.L.T. which resulted in loss of the collateral was imputed to Bank.

It is likewise true that summary judgment is not to be used as a substitute for trial. *Sheppard v. Immanuel Baptist Church*, Ky., 353 S.W.2d 212 (1961). Summary judgment could not properly be used to foreclose the opportunity of Bonded to prove facts which would establish its defense as pleaded.

The record in this case consists of five volumes of the transcript of record and

twenty-two volumes of depositions consisting of thousands of pages. In its brief Bonded asserts a number of factual matters it contends are in dispute but which it would have been able to prove on a trial on the merits. It cites the discovery depositions as evidence of its ability to prove these allegedly disputed issues of fact.

A majority of this court is of the opinion that Bank would be entitled to judgment on its note as a matter of law even if Bonded could establish as a fact each of the matters which it contends it can prove. In other words, the facts relied upon by Bonded even if fully established, do not, in the opinion of the court, justify a conclusion that the Bank negligently impaired the collateral or that S.L.T. was the agent of the Bank. The great mass of material in the record leaves little room to speculate that Bonded would have been able at trial to establish some further fact which would constitute a defense to its liability on the note and, in fact, Bonded does not so contend.

The Bank, although it asserted a claim against both S.L.T. and Bonded and obtained judgment in an identical amount against each of them, is entitled to only one recovery of the full amount of its loss. It was entitled to pursue its claim against either or both. S.L.T. did not appeal the judgment against it, and its liability to the Bank is fixed. S.L.T. has pending a cross-claim against Bonded in which it may, if successful on the cross-claim, recover from Bonded a part or all of any amount it is required to pay to Bank.

Bonded has pending a cross-claim against S.L.T. by which it may, if successful on its cross-claim, recover a part or all of any money it is required to pay to Bank.

The real controversy in this litigation is the extent to which Bonded or S.L.T. will ultimately have to bear the loss incurred by Bank. That controversy can be disposed of appropriately in the trial of the cross-claims.

By an agreement between Bank and S.L.T., Bank's judgment against S.L.T. was vacated, and Bank's claim against S.L.T. was dismissed with prejudice. This leaves standing Bank's judgment against Bonded, and if Bank is permitted to enforce the judgment against Bonded, it will from the recovery repay the $2,800,000.00 loan to S.L.T., and S.L.T. will be required to repay its $2,800,000.00 loan to its insurers. In that event, Bonded could still attempt to assert its cross-claim against S.L.T. The net effect would be that S.L.T. and its insurers would be made whole. Bonded would have to raise the money to satisfy the judgment and, if still solvent attempt a recovery against S.L.T.

Of course, this result would have occurred if Bank had elected, as it could have done, to seek its satisfaction entirely from Bonded in the first place, but it did not so elect, choosing instead to enter into the agreement with S.L.T.

If Bank has been paid $2,800,000.00 of the judgment, it is no longer the real party in interest in seeking a further recovery of that $2,800,000.00. The real question here is whether the money advanced to Bank by S.L.T. was a payment on the judgment or a loan.

It is a pure fiction to designate as a loan an arrangement where money is advanced in satisfaction of a claim which is then dismissed, with no obligation to repay the money advanced except to the extent that the recipient of the so-called loan shall make a recovery from a third party.

Nevertheless, this court has approved the use of such a fiction when prejudice would result to an insurer from bringing a claim in its own name. *Aetna Freight Lines, Inc. v. R.C. Tway Company*, Ky., 298 S.W.2d 293 (1956).

In *Tway*, Continental Insurance Company loaned to its insured a sum necessary to settle a claim against the insured with a provision that the insured was obligated to repay the loan only to the extent that it could recover by way of indemnity from a third party. The insured then filed suit against the third party and the question was whether the insured or Continental

was the real party in interest. The court held:

"While it is clear that the difference between a loan of the type under consideration and an absolute payment is mere fiction, that ground alone is insufficient to declare the transaction a nullity. Rather, we will look to the purpose of the fiction created by the parties to the transaction. It is clear the purpose of the loan agreement was to insulate Continental from a prejudice which juries frequently apply against insurance companies. Our courts have long been aware of this prejudice, as exemplified by our decisions in personal injury cases where the element of insurance has been improperly injected.

"The purpose of our trial procedure is to secure justice in each case. There is no room in our system of jurisprudence for the operation of prejudices, whether they be against insurance companies, manufacturers, or in favor of homeless children. Hence, we cannot say an agreement which is intended to avoid the operation of an undue prejudice is against public policy ...." *Id.* at 296.

It is apparent that the reason for the approval of the "loan-receipt" fiction was simply to preclude a prejudice which Continental would encounter if required to pursue the claim against the third party in its own name. It is also important to note that *Tway* only recognizes the "loan receipt" fiction to the extent that it permits an insurer to loan money to its own insured for the purpose of settlement of a claim against the insured, and to permit the insured to maintain an action in the name of the insured against a third party.

In this case, the insurance companies insuring S.L.T. seek not to have their own insured maintain a third-party proceeding but instead to have their insured proceed in the name of the Bank against a third party to enforce a judgment against the third party.

In *Biven v. Charlie's Hobby Shop,* Ky., 500 S.W.2d 597 (1973) we stated:

"In all cases where this court has considered the validity of the loan-receipt, there was in existence at the time of its execution a contractural obligation to pay between the insurer who advanced the funds and the insured who was the recipient. In the case before us there was absolutely no contractual relationship between the insurer and Mrs. Biven."

Likewise, there is in this case, absolutely no contractual obligation to pay between S.L.T. and the Bank.

The decision of the Court of Appeals was premised upon the basis that approval of this type of "loan-receipt" fiction would not prejudice Bonded. The record does not clearly illustrate this to be true. The effect of this transaction, if approved, would allow S.L.T. to proceed against Bonded, not on the merits of its cross-claim but in the name of the Bank for collection of a judgment obtained by the Bank.

We have decided that approval of the "loan-receipt" fiction should not be expanded beyond the original scope and reasoning of *Aetna Casualty Co. v. R.C. Tway Company, supra.* The reason for approval there was to avoid prejudice that would attach to one if required to enforce its claim in its own name. We are not advised of any prejudice that would result to S.L.T. from prosecuting, in its own name, its claim against Bonded within the framework of its cross-claim which remains to be tried.

■ We hold that summary judgment was properly entered in favor of First National Bank of Louisville against Bonded Elevator, Inc., and further hold the payment to Bank by S.L.T. constituted either a full or partial satisfaction of the Bank's judgment, and to the extent that its judgment has been satisfied, Bank can no longer proceed for the collection of the judgment against Bonded.

S.L.T. and Bonded may each proceed to recover from the other under the pending cross-claims any amount to which either of

them can establish entitlement under the cross-claims.

The judgment is Affirmed in Part and Reversed in Part, and the case remanded to the trial court for further proceedings in conformity with this opinion.

STEPHENS, C.J., and VANCE, AKER, LEIBSON, STEPHENSON and WINTER-SHEIMER, JJ., concur.

GANT, J., did not sit or participate in the decision of this case.