Wilbur A. **EDWARDS**; Johnetta Haselden; and Agway Insurance Company, Appellants,

v.

Kenneth **LAND**; Martha Land; and Kendra Land, Appellees.

No. 90–CA–002391–MR.

Court of Appeals of Kentucky.

July 24, 1992.

Discretionary Review Denied by Supreme Court May 21, 1993.

James G. Sheehan, Jr., Sheehan, Barnett & Hays, Danville, for appellant Edwards.

Pierce W. Hamblin, Jane Durkin Samuel, Landrum & Shouse, Lexington, for appellants Haselden and Agway Ins. Co.

Richard Clay, Clay & Clay, Danville, Robert L. Bertram, Bertram & Wilson, Jamestown, for appellees Land.

Before LESTER, C.J., and HUDDLESTON and WILHOIT, JJ.

HUDDLESTON, Judge.

This is an appeal from a Boyle Circuit Court order finding House Bill 551 of the 1988 General Assembly—and consequently KRS 411.188—unconstitutional. Because we believe the trial judge erred as a matter of law in reaching this determination, we reverse.

This litigation began when Kenneth, Martha and Kendra Land filed suit against Wilbur A. Edwards and Johnetta Haselden for damages resulting from personal injuries sustained in an automobile accident. Kentucky Farm Bureau Insurance Company thereafter intervened to recover no-fault

benefits, naming Haselden's insurer, Agway Insurance Company, as a defendant.

The Lands subsequently filed a "Second Amended Complaint for Declaratory Relief," seeking to have KRS 411.188 [1] and the House Bill from which it derived, HB 551—entitled "AN ACT relating to civil actions," declared unconstitutional. KRS 411.188 appeared as § 4 of HB 551. The Lands offered a panoply of theories as grounds for the statute's demise.

Boyle Circuit Court responded by finding KRS 411.188 not to be an intrusion on the rule-making powers of Kentucky's Court of Justice, and therefore not violative of Ky. Const. § 28 [2] and not contrary to KRS 447.-154.[3] The court found that the notice mandated by the statute vindicated the rights of notice and due process, substantive rights which the legislature may protect.

Section 54 of the Kentucky Constitution, which is entitled "No restriction on recovery for injury or death," provides that:

> The General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property.

The court determined that KRS 411.188 was not violative of Ky. Const. § 54, noting that the abrogation of the "collateral source rule" has been upheld in other states having constitutional provisions similar to Ky. Const. § 54.

The court found that KRS 411.188 does not constitute special legislation, and was therefore in compliance with Ky. Const. §§ 59 & 60.

The court determined that KRS 411.188 does not restrict the right of access to the courts by plaintiffs, citing the Florida case. *Pinillos v. Cedars of Lebanon Hospital Corp.*, 403 So.2d 365 (Fla.1981). The court further found that the statute does not require attorneys to render unremunerated legal advice in its notification provisions, since general statements regarding legal requirements do not generally constitute the act of rendering legal advice.

The court determined that HB 551, entitled "AN ACT relating to civil actions," in fact addressed a plurality of subjects, only some of which relate to civil actions, in contravention of Ky. Const. § 51 which declares, in pertinent part, that:

> No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title. . . .

Significantly, however, the court noted that KRS 411.188 "does fit within the title," yet found that HB 551's violation of Ky. Const. § 51 rendered the Act unconstitutional in its entirety. KRS 411.188 as one component of HB 551 was consequently struck down, despite the fact, again, that

---

1. KRS 411.188, entitled **"Notification of parties holding subrogation rights—Collateral source payments and subrogation rights admissible,"** provides:

   "(1) This section shall apply to all actions for damages, whether in contract or tort, commenced after July 15, 1988.

   "(2) At the commencement of an action seeking to recover damages, it shall be the duty of the plaintiff or his attorney to notify, by certified mail, those parties believed by him to hold subrogation rights to any award received by the plaintiff as a result of the action. The notification shall state that a failure to assert subrogation rights by intervention, pursuant to Kentucky Civil Rule 24, will result in a loss of those rights with respect to any final award received by the plaintiff as a result of the action.

   "(3) Collateral source payments, except life insurance, the value of any premiums paid by or on behalf of the plaintiff for same, and known subrogation rights shall be an admissible fact in any civil trial.

   "(4) A certified list of the parties notified pursuant to subsection (2) of this section shall also be filed with the clerk of the court at the commencement of the action."

2. Ky. Const. § 28 states: **"One department not to exercise power belonging to another.**—No person or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted."

3. KRS 447.154 provides as follows: **"Laws not to limit right of Court of Justice to promulgate rules.**—No act creating, repealing, or modifying any statute shall be construed directly, or by implication, to limit the right of the Court of Justice to promulgate rules from time to time or to supersede, modify or amend any rule so promulgated. Nor shall any statute be construed to limit in any manner the power of the Court of Justice to make rules governing practice and procedure in the courts."

the court conceded that the statute was in the legitimate ambit of HB 551's title.

In their appeal, Edwards, Haselden and Agway Insurance contend that every provision of HB 551 in fact relates to civil actions, and therefore that the bill is not violative of Ky. Const. § 51. They further contend that even if HB 551 does contain a plurality of subjects, those sections of the Act which are germane to the title should be upheld as constitutional, and only those sections not conforming to the title declared void.

In their brief the Lands essentially repeat all the arguments relating to KRS 411.188's infirmity rejected by the circuit court,[4] in addition to supporting the court's determination of HB 551's unconstitutionality.

■ It has long been the rule in Kentucky that when a subject foreign to the title of an act is introduced into the act's body, that subject or those subjects may be omitted from the act, and the subjects conforming to the title retained, thereby rendering the act, thus distilled, constitutional. *Farris v. Shopper's Village Liquors, Inc.*, Ky., 669 S.W.2d 213, 214 (1984); *Carrigan v. Fiscal Court of Fulton County*, 289 Ky. 562, 159 S.W.2d 420, 421 (1942); *State Board of Health v. Willman*, 241 Ky. 835, 45 S.W.2d 458, 459 (1932); *Thompson v. Commonwealth*, 159 Ky. 8, 166 S.W. 623, 624 (1914); *Wiemer v. Commissioners of Sinking Fund of City of Louisville*, 124 Ky. 377, 99 S.W. 242, 245 (1907). This principle was elaborated early on in *State Board of Charities and Corrections v. Hays*, 190 Ky. 147, 227 S.W. 282, 284 (1920):

> [O]ne part of the body of the act cannot be saved rather than the other where both are covered alike by the title, as may be done where a portion of the body of the act alone is violative of this section of the Constitution. In the former case to hold one portion of the act rather than the other valid would require of the judiciary the selection of the subject-matter of the act upon a mere guess and without

legislative guide to determine which, if either, of the two subjects would have been considered alone by the Legislature. Upon the other hand, where the body of the act contains a departure from a valid title, such portion of the act may be declared void, and all that is pertinent to the title selected by the Legislature may be enforced by the judiciary as a legitimate exercise of legislative authority under its own selection of the subject-matter of the enactment.

The court below cites 73 Am.Jur.2d *Statutes* § 126 (1974) as authority for holding HB 551 unconstitutional in its entirety, due to the multiplicity of subjects supposedly encompassed by the act. The utilization of this authority is clearly inappropriate, however, when much Kentucky case law directly addresses the issue of severing nonconforming sections from acts which are otherwise constitutionally sound.

■ Kentucky recognizes the general principle of jurisprudence that a court should refrain from addressing issues not before it. In the context of Ky. Const. § 51, consequently, we have demonstrated an unwillingness to excise sections from acts which do not appear to conform to the title, when the court is being called upon to adjudge the constitutionality of only a certain section or certain sections within the act. *Owsley v. Commonwealth*, Ky.App., 743 S.W.2d 408, 410 (1988).

■ The foregoing considered, we hold that the trial judge erred as a matter of law in determining HB 551 to be unconstitutional in its entirety. We further hold that the trial court should have limited its analysis under Ky. Const. § 51 to addressing the conformity of KRS 411.188 to the title of HB 551. The trial court was clearly correct in noting that KRS 411.188 conforms to the title of HB 551, and we so hold. The determination of whether or not other sections of HB 551 conform to the act's title, we "leave to be considered another day." *Owsley* at 410.

---

4. Although the Lands as appellees do not present these rejected arguments in a cross-appeal, we will nevertheless consider them. See *Brown v. Barkley*, Ky., 628 S.W.2d 616, 618–619 (1982).

■ Kentucky's Supreme Court has the authority to promulgate rules of practice and procedure in the courts of this Commonwealth. Ky. Const. § 116. However, this is by no means an inflexibly exclusive authority. The Supreme Court in fact states in *Ex Parte Farley*, Ky., 570 S.W.2d 617, 624 (1978):

> It is not our disposition to be jealous or hypertechnical over the boundaries that separate our domain from that of the legislature. Where statutes do not interfere or threaten to interfere with the orderly administration of justice, what boots it to quibble over which branch of government has rightful authority? We respect the legislative branch, and in the name of comity and common sense are glad to accept without cavil the application of its statutes pertaining to judicial matters....

The Court later states in *Ex parte Auditor of Public Accounts*, Ky., 609 S.W.2d 682, 688 (1980):

> The correct principle, as we view it, is that the legislative function cannot be so exercised as to interfere unreasonably with the functioning of the courts, and that any unconstitutional intrusion is *per se* unreasonable, unless it be determined by the court that it can and should be tolerated in a spirit of comity....
>
> Inevitably, there is and always will be a gray area in which a line between the legislative prerogatives of the General Assembly and the rule-making authority of the courts is not easy to draw. The policy of this court is not to contest the propriety of legislation in this area to which we can accede through a wholesome comity....

More recently, the court in *Commonwealth v. Reneer*, Ky., 734 S.W.2d 794, 797 (1987), observes:

> [Although a statute may manifestly constitute] an encroachment by the General Assembly upon the prerogatives of the Judiciary, it is, nevertheless, not an unreasonable encroachment if it can be accepted under the principles of comity.

And see generally the discussion of this issue in *Reneer* at 796–797.

■ Considered in this light, we agree with the trial court that a legislative attempt to modify in some measure the procedure to be followed and to specify the notice to be given those holding subrogation rights in actions for damages, whether in contract or tort, falls within that body's reasonable purview, although it may encroach somewhat upon the prerogatives of the judiciary. We accordingly hold that KRS 411.188 does not "interfere unreasonably with the functioning of the courts...." *Ex parte Auditor* at 688.

■ As earlier noted, Section 54 of the Kentucky Constitution provides that:

> The General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property.

The Lands contend that

> [b]y repealing the collateral source rule, the legislature effectively limits the amount a plaintiff in a personal injury action can recover. Allowing evidence of any collateral source payments received by personal injury plaintiffs obviously invites juries to reduce any award of damages that might be received.

The Lands cite a number of cases in an effort to bolster their argument. We however fundamentally disagree with their contention. Nowhere in KRS 411.188 is any sort of cap set on the recovery available in a civil action for injury or death. The statute makes no mention at all of limiting damages. While the statute *may* serve to *reduce* the level of recovery awarded in some civil actions when compared with the general level of awards made before the statute's enactment, no *limitation* on recovery is to be found in the statute.

It is incumbent to note that the admission into evidence of a plaintiff's collateral benefits by no means serves as a guarantee that there will be any reduction at all in the damages awarded by the trier of fact. KRS 411.188 does not compel a jury to setoff all collateral benefits received by the plaintiff in assessing the recovery available; it simply provides additional information for the jury to consider in determining

the damages sustained by the plaintiff, which information the jury may completely ignore if it so chooses.

The Lands contend that KRS 411.188 violates the equal protection guarantee of the Fourteenth Amendment to the United States Constitution, "by placing on plaintiffs the burden of notifying persons with possible subrogation rights and allowing evidence of collateral source payments to be introduced against plaintiffs...."

■ KRS 411.188 would be subject to "strict scrutiny" regarding its equal protection impact if we determine that plaintiffs in civil actions are a "suspect class" peculiarly disadvantaged by the statute, or if we determine that the statute impermissibly interferes with the exercise of a fundamental right. See *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520, 524 (1976), and accompanying citations. A "suspect class" ordinarily involves classifications based on, *e.g.,* race, gender, alienage or ancestry. *Id.* We know of no precedent for holding that plaintiffs in civil actions are a suspect class—*i.e.,* a class facing some historical or monumental disadvantage—and we do not now create such a precedent.

We furthermore fail to discern any fundamental right adversely impacted by KRS 411.188. The statute does not deny plaintiffs access to the courts, nor in any way impede their right to pursue litigation.

■ Accordingly, our analysis of KRS 411.188 is limited to considering whether the statute is rationally related to the furtherance of a legitimate state interest. *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942–943, 59 L.Ed.2d 171, 176 (1979); *Praete v. Commonwealth,* Ky.App., 722 S.W.2d 602, 603 (1987). We believe that maintaining the availability and affordability of liability insurance in the Commonwealth of Kentucky is within the legitimate interest of the Commonwealth, and we are satisfied that KRS 411.188 is a reasonable and limited measure intended to help secure that end.

The Lands couple their equal protection argument with a contention that KRS 411.188 violates Ky. Const. § 59's prohibition against special legislation. This constitutional provision states in pertinent part:

The General Assembly shall not pass local or special acts concerning any of the following subjects, or for any of the following purposes, namely:

First: To regulate the jurisdiction, or practice, or the circuits of the courts of justice....

The Lands submit:

[The Ky. Const. § 59] protection is similar to the equal protection guarantee in that it prohibits legislative classifications that are unreasonable or not based on any substantial grounds, and is intended to place all similarly situated persons upon a plane of equality and to render it impossible for any class to obtain preferred treatment.

They then state:

KRS 411.188(3) presumes to allow defendants in civil actions the right to submit evidence of collateral source payments and other evidence bearing on the plaintiff's financial condition while not allowing a plaintiff the similar right to admit evidence of the defendant's financial condition or that the defendant has insurance.

■ We believe our holdings above— that KRS 411.188 does not impermissibly intrude upon the judicial prerogative, and evaluating the statute's equal protection impact—serve to in large measure defuse the Land's arguments. We further note that "special legislation" was defined a half-century ago as follows: "A statute which relates to persons or things *as a class* is a general law, while a statute which relates to particular persons or things *of a class* is special." *Johnson v. Commonwealth,* 291 Ky. 829, 165 S.W.2d 820, 825 (1942). (Citation omitted.) Kentucky's highest court has more recently observed:

A special law is legislation which arbitrarily or beyond reasonable justification discriminates against some persons or objects and favors others.

*Board of Education of Jefferson County v. Board of Education of Louisville,* Ky., 472 S.W.2d 496, 498 (1971). (Citation omitted.) Within the context of these two cases, KRS 411.188—addressing *all* plaintiffs in *all* contract and tort actions in which damages are sought—manifestly does not constitute special legislation under *Johnson.* We repeat our belief that KRS 411.188 is a measure designed to help in accomplishing a legitimate state interest and therefore hold that the statute does not constitute special legislation under *Board of Education of Jefferson County.*

KRS 411.188(2) provides:

At the commencement of an action seeking to recover damages, it shall be the duty of the plaintiff or his attorney to notify, by certified mail, those parties believed by him to hold subrogation rights to any award received by the plaintiff as a result of the action. The notification shall state that a failure to assert subrogation rights by intervention, pursuant to Kentucky Civil Rule 24, will result in a loss of those rights with respect to any final award received by the plaintiff as a result of the action.

The Lands contend as follows:

Because the statute imposes a duty upon plaintiffs' attorneys to conduct legal and factual inquiries and give legal advice without affording them any compensation for these services, it violates the constitutional prohibition on taking of property without just compensation.... Requiring plaintiffs' attorneys to provide the kind of services and advice mandated by KRS 411.188 thus violates the guarantees of Section 13 of the Kentucky Constitution and the due process clause of the fourteenth amendment to the United States Constitution that property shall not be taken without just compensation.... By requiring attorneys to give inaccurate legal advice in violation of the standards established by the judiciary, KRS 411.188(2) also violates Section 116 of the Kentucky Constitution by intruding on the Supreme Court's plenary power over members of the bar and their conduct.

This Court has stated:

The relationship of attorney-client is a contractual one, either expressed or implied by the conduct of the parties. The relationship is generally that of principal and agent; however, the attorney is vested with powers superior to those of any ordinary agent because of the attorney's quasi-judicial status as an officer of the court; thus the attorney is responsible for the administration of justice in the public interest, a higher duty than any ordinary agent owes his principal. Since the relationship of attorney-client is one fiduciary in nature, the attorney has the duty to exercise in all his relationships with this client-principal the most scrupulous honor, good faith and fidelity to his client's interest.

*Daugherty v. Runner,* Ky.App., 581 S.W.2d 12, 16 (1978).

We are not convinced that merely providing a general statement of the law to parties with whom an attorney-client relationship has not previously been established will result in the establishment of that relationship, and consequently result in an attorney rendering "legal advice without compensation." Without the establishment of an attorney-client relationship, an attorney cannot be said to render legal advice by simply providing a party with a statutorily required statement of the law. In such a situation there would not exist "that relation of confidence and trust so necessary to the status of attorney and client. This is the essential of legal practice—the representation and the advising of a particular person in a particular situation." *New York County Lawyers' Assoc. v. Dacey,* 28 A.D.2d 161, 171, 283 N.Y.S.2d 984, 988 (N.Y.App.Div.1967). And see *State Bar of Michigan v. Cramer,* 399 Mich. 116, 249 N.W.2d 1, 8–9 (1976); *State v. Winder,* 42 A.D.2d 1039, 348 N.Y.S.2d 270, 272 (N.Y.App.Div.1973). We therefore hold that KRS 411.188 does not require an attorney to render "unfounded legal advice without compensation."

Considering in its entirety our foregoing analysis of KRS 411.188, we hold that the statute is not unconstitutionally vague and indefinite. Accordingly, Boyle Circuit Court's determination that HB 551 and KRS 411.188 are unconstitutional is reversed and this case is remanded to that court for further proceedings.

All concur.