Richard A. O'BRYAN and Nancy
O'Bryan, Appellants,

v.

Catherine M. HEDGESPETH, Appellee.

No. 93–SC–963–DG.

Supreme Court of Kentucky.

Jan. 19, 1995.

Jeanie Owen Miller, Russ Wilkey, Castlen & Wilkey, P.S.C., Owensboro, for appellants.

B.R. Paxton, Jonathan S. King, Central City, for appellee.

E. André Busald, William J. Kathman, Jr., Joseph A. McGee, Busald Funk Zevely, P.S.C., Florence, for amicus curiae.

LEIBSON, Justice.

At issue is the constitutionality of KRS 411.188, a statute enacted in 1988 legislating the practice and procedure to apply to all civil actions wherein the plaintiff has received "collateral source payments" related to the same expenses for which he seeks damages in a civil action. Subsection (2) of the statute provides for notice to parties who "hold subrogation rights to any award received by the plaintiff as a result of the action," and an opportunity "to assert subrogation rights by intervention," and Subsection (3) of the statute specifies that "[c]ollateral source payments ... shall be an admissible fact in any civil trial."

The statute does not specify how the jury, as trier of fact, is to apply this evidence in deciding the damages to which the plaintiff is entitled in the pending case. In this case the evidence was the medical bills incurred by the appellant, Richard O'Bryan, totaled $48,-068.04, his out-of-pocket expenses were $18,-390.08, and he had received some $30,000 in collateral source payments. The jury awarded $18,400 for the medical expenses he had incurred. Without question, the jury simply awarded the plaintiff the amount submitted as evidence of his out-of-pocket expenses. Whether those entities who made collateral source payments had intervened to assert subrogation rights and were thus entitled to reimbursement from "any final award received by the plaintiff as a result of the action" as provided for in KRS 411.188, is not clear; nor was this explained to the jury, or covered by the judgment. To the extent that subrogation rights are protected, the statute contemplates the subrogees rather than O'Bryan would have first claim on the award for medical expenses regardless of the jury's intention.

The essential facts are as follows. The complaint alleges personal injuries suffered by Richard A. O'Bryan in two separate motor vehicle collisions, the first occurring June 4, 1989, wherein the appellee, Catherine M. Hedgespeth, is the defendant, and a second on July 14, 1989, involving Rebecca C. Murphy. The complaint included a claim on behalf of the appellant, Nancy O'Bryan, as Richard's wife, for loss of consortium. Claims against Ms. Murphy were settled before trial, and dismissed. Immediately before trial appellants made a motion in limine to exclude evidence of collateral source payments, specifying as grounds "the statute is unconstitutional and will be ... finally adjudicated so," and objecting "to any mention of collateral source during the course of this trial." The trial court responded, "your objection is on the record and I'll overrule it for the record. We'll go by the statute."

The judge having ruled that evidence of collateral source payments would be admitted, the plaintiff prepared and introduced a chart labeled "Medical Bills of Richard O'Bryan," specifying in columns: "Provider, Amount, Collateral Source, (and) Paid by O'Bryan." Plaintiff's Exhibit 6. As previously stated, the jury awarded damages for the plaintiff's out-of-pocket medical expenses rather than some lesser figure which might suggest some question as to whether all of these bills constituted reasonable and necessary expenses.

The jury verdict also awarded Mr. O'Bryan $3,200 for mental and physical pain and suffering, $3,500 for loss of wages and income, zero for permanent impairment of earning power, and zero for future medical expenses. The total award for damages was $25,100. Pursuant to other instructions covering liability and apportionment, the jury apportioned fault 100% to Hedgespeth and zero to O'Bryan in the case at issue, the accident involving Catherine Hedgespeth, but then attributed 50% of plaintiff's total damages to the accident involving Rebecca Murphy which had been settled before trial. The jury awarded zero to the appellant, Nancy O'Bryan, on her claim for loss of consortium. Pursuant to the jury award of $25,100 in total damages, 50% attributable to each accident, the trial court entered final judgment against the appellee, Catherine M. Hedgespeth, for $12,550. After the plaintiffs' motion for a new trial was overruled, the plaintiffs pursued an appeal to the Court of Appeals, which affirmed the judgment.

The issues presented and rejected in the Court of Appeals were: (1) whether the collateral source statute, KRS 411.188, is unconstitutional, and therefore the trial court erred

in allowing the jury to hear evidence introduced pursuant to the statute of collateral source payments made to the plaintiff; (2) whether, if the statute is constitutional, nevertheless the trial court should have excluded evidence regarding the portion of collateral source payments which constituted payment of no-fault benefits; and (3) whether the award of zero dollars for permanent impairment of earning power was inadequate as a matter of law. The Court of Appeals overruled the challenge to the constitutionality of KRS 411.188, citing its previous decision in *Edwards v. Land,* Ky.App., 851 S.W.2d 484 (1992); agreed with the appellants that "no-fault benefits or PIP payments are not a collateral source within the purview of KRS 411.188(3)," citing our Court's decision in *Ohio Casualty Insurance Co. v. Ruschell,* Ky., 834 S.W.2d 166 (1992), but then held that "this issue is not preserved for our review"; and rejected the claim for a new trial because no award was made for permanent impairment of earning power, on grounds that under the evidence "the jury had every right to believe that O'Bryan was not permanently impaired by the accident with Catherine Hedgespeth."

We granted discretionary review to consider whether, as appellants claim, KRS 411.188 is unconstitutional, an issue of institutional importance because the statute impacts the trial of a great many civil actions. If this statute were constitutional, we would agree with the Court of Appeals that the appellants should not prevail on the remaining issues. The objection on constitutional grounds to all evidence of collateral source payments did not raise the separate question of whether no-fault benefits classify as collateral source payments. Further, we would not second-guess the Court of Appeals' decision affirming the jury award of zero dollars for permanent impairment of earning power. We reverse the award and order a new trial on damages only in the context that all evidence of collateral source payment was constitutionally impermissible, and prejudicial to the jury's consideration of damages.

■ On the other hand, we reject the appellee's claim the appellants' motion in limine, when denied, failed to preserve their objection to evidence of collateral source payments. The appellants elected to go forward with the evidence of collateral source payments in the presentation of their case once their motion in limine was overruled, rather than to leave it to the defendant to present this evidence. The judge had ruled admissible evidence that some $30,000 in medical expenses O'Bryan had incurred had already been reimbursed from other sources. The evidence as presented through the plaintiffs' case obviously prejudiced the jury's award. Left for the defendant to present after the plaintiffs had apparently concealed it, such evidence would have been even more devastating, adding insult to injury. The appellee argues that we should not assume that if the plaintiffs had not gone forward with this evidence the defendant would have done so. If such was not the defendant's intention, the time to say so was when the motion to exclude the evidence was made, thus mooting the issue. The likelihood the defendant would not present this evidence after prevailing against the motion in limine borders on absurdity.

Further, the record shows the exhibit the plaintiffs prepared, listing medical bills and collateral source payments, after the motion in limine was overruled incorporated defense counsel's "suggestion," confirming intent to present such evidence. Finally, we note that in the trial court's order overruling the plaintiffs' motion for a new trial the court specifically rejects lack of preservation, stating as follows:

> The Defendant argued that it was the Plaintiff who presented the collateral source payments and that is true. However, the Defendant argued against the Plaintiff's motion in limine to exclude any evidence of collateral source payments. The Court must assume that if the Plaintiff had not introduced such evidence, then the Defendant would have.

Kentucky practice concerning "Motions in Limine" was somewhat uncertain until recently codified in KRE 103(d), which provides in pertinent part:

> A party may move the court for a ruling in advance of trial on the admission or exclusion of evidence. . . . A motion in limine

resolved by order of record is *sufficient to preserve error for appellate review* .... (Emphasis added.)

■ The appellee cites intermediate appellate court decisions from two states, Oregon and Illinois, to support the waiver argument. Both are different from the present case in essential facts, and both fail to present reasons which would justify applying waiver here. The only reasonable interpretation of KRE 103(d) is that, as a general rule, once a motion in limine to exclude evidence has been overruled, a party may go forward with adverse evidence to avoid the appearance of concealment and still "preserve error for appellate review." KRE 103(d), as quoted *supra*. To construe a motion in limine as waived in present circumstances would defeat the purpose of KRE 103(d) and destroy the value of having such a rule.

Thus we confront the central issue in this case: the constitutionality of KRS 411.188. The statute provides, in its entirety:

(1) This section shall apply to all actions for damages, whether in contract or tort, commenced after July 15, 1988.

(2) At the commencement of an action seeking to recover damages, it shall be the duty of the plaintiff or his attorney to notify, by certified mail, those parties believed by him to hold subrogation rights to any award received by the plaintiff as a result of the action. The notification shall state that a failure to assert subrogation rights by intervention, pursuant to Kentucky Civil Rule 24, will result in a loss of those rights with respect to any final award received by the plaintiff as a result of the action.

(3) Collateral source payments, except life insurance, the value of any premiums paid by or on behalf of the plaintiff for same, and known subrogation rights shall be an admissible fact in any civil trial.

(4) A certified list of the parties notified pursuant to subsection (2) of this section shall also be filed with the clerk of the court at the commencement of the action.

The statute was enacted in 1988 as part of an omnibus bill styled "An Act relating to civil actions," Ky.Acts 1988, Ch. 224, consisting of twenty-six sections addressing at least twelve different subjects: apportionment, punitive damages, collateral source payments, a two-year statute of limitations for injury to personal property, a five-year statute of repose for home builders, contents of articles of incorporation, limited liability for corporate directors, limited liability for directors of non-profit corporations, limited liability and periodic payments of damages in cases against municipal government, peer review confidentiality, articles of incorporation for professional service corporations, and limited liability for a municipal utility board or commission.

■ Section 4, now KRS 411.188, as quoted *supra*, covers both listing and notifying entities holding subrogation rights to any portion of the award the plaintiff seeks to receive as a result of the action, so such entity may "assert subrogation rights by intervention," and mandates that "collateral source payments ... shall be an admissible fact in any civil trial." Presumably, the term "Collateral source payments" would include, along with first-party medical and disability benefits, coverage for collision damage, fire loss, and personal property insurance of all kinds, now injected into the trial of a civil action against the wrongdoer.

■ The arguments against the constitutionality of this statute, in the main, track similar arguments made and rejected by the Court of Appeals in *Edwards v. Land, supra,* which was cited and followed by the Court of Appeals in deciding the appeal in this case. However, the issue is one of first impression in this Court. We denied discretionary review in *Edwards v. Land.* Denying discretionary review neither adopts the Court of Appeals' decision nor rejects it. Simply stated, it leaves the issue undecided at this level, albeit precedent for trial courts until such time as we should decide differently.

■ The first argument relates to the Kentucky Constitution, Section 51, the so-called "subject/title" clause, which provides in pertinent part, "No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title." In *Edwards v. Land,* the trial court

had held the collateral source statute violated the subject/title clause in the Constitution because House Bill 551 included a variety of subjects lacking "congruity or natural connection with the subject stated in the title" and because some subjects appeared "foreign to the subject expressed in the title." The Court of Appeals reversed stating:

It has long been the rule in Kentucky that when a subject foreign to the title of an act is introduced into the act's body, that subject or those subjects may be omitted from the act, and the subjects conforming to the title retained, thereby rendering the act, thus distilled, constitutional. [Citations omitted.] *Edwards v. Land*, at 487.

. . . .

The trial court was clearly correct in noting that KRS 411.188 conforms to the title of H.B. 551, and we so hold. The determination of whether or not other sections of H.B. 551 conform to the act's title, we 'leave to be considered another day.' *Id.*

We agree with the *Edwards v. Land* analysis of Section 51, and reject Section 51 as a reason to declare the present statute unconstitutional.

Next we consider the separation of powers doctrine, an argument based on the Kentucky Constitution, Sections 27 and 28, and Section 116. Sections 27 and 28 divide "the powers of the government ... into three distinct departments, each ... a separate body of magistracy," and further specify that no "persons, being of one of those departments, shall exercise any power properly belonging to. either of the others." Kentucky Constitution Section 116 vests exclusive jurisdiction in the Supreme Court to prescribe "rules of practice and procedure for the Court of Justice."

■■■ Responsibility for deciding when evidence is relevant to an issue of fact which must be judicially determined, such as the medical expenses incurred for treatment of personal injuries, falls squarely within the parameters of "practice and procedure" assigned to the judicial branch by the separation of powers doctrine and Section 116. Before KRS 411.188 was enacted, evidence of payments to the plaintiff from medical or disability insurers was excluded as irrelevant, recognizing that such payments have no bearing on the issue to be judicially decided, the amount of damages the plaintiff has incurred and is entitled to recover from the wrongdoer in the civil action, nor does it matter that the source of the collateral source benefits may be entitled to reimbursement from the recovery because of contractual or statutory subrogation rights. See, e.g., *Davidson v. Vogler*, Ky., 507 S.W.2d 160, 164 (1974), and, more recently, *Burke Enterprises, Inc. v. Mitchell*, Ky., 700 S.W.2d 789, 796 (1985), stating that "to depart from the collateral source rule would provide the tortfeasor a 'windfall' to the substantial detriment of the injured party." There is no legal reason why the tortfeasor or his liability insurance company should receive a "windfall" for benefits to which the plaintiff may be entitled by reason of his own foresight in paying the premium or as part of what he has earned in his employment, and benefits received are usually subject to subrogation so there is no "double recovery" by any stretch of the imagination.

■■■ KRE 401 states:
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

The only such facts of consequence here are those bearing on the expenses incurred. Collateral source benefits may relate to the plaintiff's *need* to recover damages from the wrongdoer, but they have no bearing on the plaintiff's *right* to recover such damages. This statute encourages the jury to disregard the plaintiff's evidence as to the medical bills incurred and to temper their verdict with an irrelevant consideration.

At oral argument before the Supreme Court, the appellee's counsel stated that at trial he made no attempt to explain or argue to the jury why or how the collateral source evidence should be used by the jury in deciding the amount of damages to which the plaintiff was otherwise entitled in this case. The reason is there is no way to explain it. So the jury was left to guess how to apply

the evidence, and responded by deducting the collateral source payments from the medical bills incurred, awarding approximately $30,000 less than the amount to which plaintiff would have been otherwise entitled by the verdict.

*Edwards v. Land* concluded that KRS 411.188 should be embraced in lieu of the collateral source rule under "principles of comity," just as the Supreme Court had elected to embrace a statute prescribing practice and procedure at the sentencing phase of a criminal trial in *Commonwealth v. Reneer,* Ky., 734 S.W.2d 794 (1987). *Edwards v. Land,* 851 S.W.2d at 488. The Court of Appeals reasoned that to do so would not "interfere unreasonably with the functioning of the courts." *Id.* But it did so in this case.

"Comity," by definition, means judicial adoption of a rule unconstitutionally enacted by the legislature "not as a matter of obligation, but out of deference and respect." *Black's Law Dictionary,* "Judicial Comity," 5th Ed., p. 242 (1979). The decision whether to give life through comity to a statute otherwise unconstitutional because it violates separation of powers doctrine is one of institutional policy reserved for the Supreme Court level. SCR 1.010; 1.020(1)(a). The responsibility of lower courts, including the Court of Appeals, is to follow the law, which includes constitutional separation of powers doctrine, and to correct error accordingly, even if to do so means declaring a legislative enactment unconstitutional. Once having determined the collateral source payment statute violated the separation of powers doctrine, the Court of Appeals should have ruled the statute unconstitutional.

Nor is this a statute to which this Court could properly apply the principle of comity. In *Commonwealth v. Reneer, supra,* we concluded the practice and procedure legislatively prescribed would enhance rather than impair the judicial function in deciding an appropriate sentence. But the present statute does nothing to enhance the jury's fact-finding function. It provides no framework for the jury to relate the information the jury is to receive to the decision the jury must make regarding the amount of damages the plaintiff has incurred as a result of the injury, and we can conceive of none. It serves only to confuse the issue the jury must decide with considerations regarding the plaintiff's lack of need to be reimbursed for out-of-pocket expenses. The plaintiff will still need a judgment against the defendant covering such expenses if obligated to repay them because of contractual or statutory subrogation.

As yet, nobody has explained how this statute is supposed to work. When evidence of collateral source payments totaling $30,000 is admitted at trial, and the verdict reduced accordingly because the jury assumes the plaintiff will get the sum awarded, who gets the award? If the plaintiff gets it, the entities who paid collateral source benefits are cut off from their subrogation rights contrary to the statute. On the other hand, if the subrogees now get the $18,000 awarded, does the plaintiff who is out-of-pocket $18,000 then recover nothing? In this scenario, even if the plaintiff gets nothing and the entities paying collateral source benefits get the $18,000 to which they are subrogated, these entities are still out-of-pocket $12,000, the difference between $30,000 and $18,000.

In *Akers v. Baldwin,* Ky., 736 S.W.2d 294 (1987), this Court held separation of powers doctrine required we strike legislation creating a presumption in broad form deed cases "that the intention of the parties to the instrument was that the coal be extracted only by the method or methods of commercial coal extraction commonly known to be in use in Kentucky in the area affected at the time the instrument was executed." *Id.* at 308. We held that the statute in question transgressed the fact-finding function which falls within the exclusive province of the judiciary. How such deeds should be construed was modified in *Akers,* and subsequently overruled in *Ward v. Harding,* Ky., 860 S.W.2d 280 (1993). Further, the people enacted a constitutional amendment to replace the invalidated statute. Nevertheless, *Ward v. Harding* reiterates the separation of powers principle. It acknowledges the portion of *Akers v. Baldwin* recognizing the legislature must not intrude by statute into the judicial prerogative, reminding us that "[c]ourts are the proper forums to determine the issues presented in

the interpretation of *past* transactions...." *Ward v. Harding,* 860 S.W.2d at 283 (emphasis original, citation omitted).

Thus, as a rule of practice and procedure, the present statute is constitutionally defective under the separation of powers doctrine. On the other hand, if we were to assume this statute intends a substantive rule limiting the damages recoverable in a civil action, the statute is constitutionally defective under Section 54 of the Constitution. Section 54 provides:

> The General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property.

The plaintiff's right to recover against the wrongdoer in a personal injury claim for the expenses incurred, i.e., the special damages including medical expenses and wage loss, is one of long-standing, predating the Constitution and constitutionally protected by the "jural rights" doctrine as elaborated in cases from *Kentucky State Journal Co. v. Workmen's C. Board,* 161 Ky. 562, 170 S.W. 1166 (1914) and *Ludwig v. Johnson,* 243 Ky. 533, 49 S.W.2d 347 (1932) to *Perkins v. Northeastern Log Homes,* Ky., 808 S.W.2d 809 (1991). The right of every individual in society to access a system of justice to redress wrongs is basic and fundamental to our common law heritage, protected by Sections 14, 54 and 241 of our Kentucky Constitution. A substantive law change denying damages for medical expenses and wage loss in a civil action to those plaintiffs who have access to collateral source benefits would violate Section 54. Those plaintiffs receiving collateral source payments cannot have their tort remedy denied as punishment for their prudence in obtaining insurance coverage to assist them in the event of a catastrophe, and their misfortune compounded by making them appear to seek damages for which they have no need.

This statute was not so written as to express a substantive limitation on damages. If it were so, it would transgress Section 54, which probably explains why it was not so written. But by the same token as a change in the rules of practice and procedure it transgresses the judicial prerogative, and thus the Kentucky Constitution, Sections 27 and 28, and Section 116.

This decision that the statute violates the separation of powers sections in our Kentucky Constitution makes it unnecessary to address the further argument regarding constitutional infirmity, which centers on equal protection and due process guarantees found in the Kentucky Constitution, Section 2, as enhanced in 1891 by adding Kentucky Constitution Sections 59 and 60.

Thus we conclude KRS 411.118 is unconstitutional, and *Edwards v. Land, supra,* should be overruled. The statute is a violation of Kentucky constitutional sections mandating and elaborating on separation of powers doctrine. The statute intrudes on responsibility assigned exclusively to the judicial branch of government. Because, as demonstrated by this case, it functions to confuse the jury regarding the factual issue rather than to assist the jury in deciding the damages incurred, we reject any notion that it should be absorbed as judicial doctrine as a matter of comity.

The decision of the Court of Appeals is reversed. The judgment of the trial court is vacated, and the case is remanded for a new trial on damages in conformity with this decision.

All concur.