RENDERED: FEBRUARY 18, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0304-MR

MOHAMMAD ALI IQTAIFAN             APPELLANT

V.

ON APPEAL FROM COURT OF APPEALS
NO. 2020-CA-0008
JEFFERSON CIRCUIT COURT NO. 17-CI-503471

HONORABLE TARA HAGERTY,           APPELLEES
JEFFERSON CIRCUIT COURT JUDGE

AND

SAMIA SULEIMAN           REAL PARTY IN INTEREST

**OPINION OF THE COURT BY JUSTICE LAMBERT**

**<u>AFFIRMING AND REMANDING</u>**

Mohammad Ali Iqtaifan (Ali) filed an original action in the Court of Appeals seeking a writ of mandamus against Jefferson Circuit Court Judge Tara Hagerty. The writ would have compelled Judge Hagerty to dismiss Ali's estranged wife, Samia Suleiman's (Samia), petition for dissolution of marriage. Ali asserts that he and Samia were already divorced under the laws of the Kingdom of Jordan when Samia filed her petition for dissolution, and her petition must therefore be dismissed. The Court of Appeals denied Ali's writ petition, and he now requests review of that decision by this Court. After review, we affirm and remand this case to the Jefferson Circuit Court for further proceedings.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Ali and Samia were married in the Kingdom of Jordan in September, 2005.  They moved from Jordan to Jefferson County, Kentucky in the summer of 2007 and have resided in Jefferson County since then.  Their marital residence is in Jefferson County, and their two young sons were both born in Jefferson County.

In July of 2017, Ali and Samia went on vacation to Jordan to visit their respective families.  They returned to Jefferson County in early to mid-August of that year.  On August 29, a domestic violence incident occurred at the marital residence between Ali and Samia which resulted in Ali being arrested for fourth-degree assault.  Notably for our purposes, the police report from the incident says: "[s]uspect stated that **he and his wife** were arguing about money and the confrontation escalated."[1]  The incident resulted in a no contact order between Ali and Samia.

On November 8, 2017, Ali filed a petition for custody and visitation regarding the couple's children.  In the petition, Ali stated "The parties are married.  Petitioner is husband.  Respondent is wife."  The petition alleged that Samia had not allowed him to see his children since the domestic violence incident even though the no contact order did not apply to them.  Ali's counsel apparently failed to properly serve Samia with this petition, but it was nonetheless agreed to and signed by Ali.

---

[1] (emphasis added).

2

Sometime following the domestic violence incident Samia filed a petition for a domestic violence order against Ali. On December 19, Judge Hagerty presided over a hearing on the motion. During the hearing, Judge Hagerty asked Ali's counsel if the parties were married. Ali's counsel replied, "they are married." Ali was sitting next to his attorney when this statement was made, and Ali made no statements to the contrary.

On January 13, 2018, Ali filed an amended petition for custody and visitation through new counsel. The amended petition explained that Ali's previous counsel failed to properly serve Samia with his original petition for custody and visitation. The amended petition made the same allegations and requests as the original petition. And, again, Ali stated in it that "the parties are married and the children were born of the marriage."

On January 25, Samia filed an answer and counter petition for divorce in response to Ali's amended petition for custody and visitation. Samia attested that she and Ali had been separated since the date of the domestic violence incident and that both had resided in Jefferson County for 180 days preceding the filing; she accordingly requested a dissolution of the marriage. In addition, she requested full custody of the children, visitation, spousal maintenance, child support, and attorney's fees.

It is at this point in the proceedings that the facts of this case became contested by the parties. Because, when Ali filed his response to Samia's petition for divorce in February 2018, he asserted for the first time that he and Samia "were divorced by a Jordanian Court on July 26, 2017." Two months

later, he filed a "Certificate of Divorce" from the Kingdom of Jordan. The certificate states that the "date of divorce" was July 26, 2017, and that the "date of issue" was February 11, 2018. Ali claimed that during the couple's July 2017 vacation to Jordan he sought a divorce from Samia under Jordanian law which follows the tenets of Sharia. According to both parties, in order to obtain a divorce under Sharia, a husband need only say that he divorces his wife three times. The presence of his wife is not necessary for the divorce to take effect. Ali claimed he did this on July 26, 2017.

However, Samia asserted that she had no knowledge that Ali sought a divorce at that time and, regardless, the divorce would have been subsequently nullified because Ali continued to live with her and allowed her to perform wifely duties for him during Idda. Idda is the three-month period following a Muslim husband's proclamation of divorce. During Idda, a husband may cancel the divorce by either announcing that he and his wife are married again or by having his wife perform wifely duties for him. Samia claimed that from the time of their return from Jordan until the domestic violence incident, she and Ali lived together in the marital home as husband and wife. She also claimed that Ali never told her of his proclamation of divorce and that she continued to perform wifely duties for him. Further, as discussed, Ali stated numerous times in court documents that he and Samia were married.

Nonetheless, based on Ali's contention that the parties were already divorced under Jordanian law, he filed a motion to dismiss Samia's petition for

4

dissolution of marriage. On August 9, 2018, Judge Hagerty entered the first order denying Ali's motion to dismiss. The order states:

> Petitioner's motion to dismiss is OVERRULED. Petitioner acknowledged the parties' marriage [in] several filings with this Court, including his initial Petition for Custody, before he filed his motion to dismiss, claiming that the parties were already divorced in Jordan. The court will determine what effect, if any, the proceedings in Jordan in 2017 have on the present action. However, Respondent may proceed with her Petition for Dissolution of Marriage.

Ali then filed a motion to alter, amend, or vacate Judge Hagerty's August 9 order, which was likewise denied on October 22, 2018. The October 22 order denying the motion to alter, amend, or vacate provides: "Upon full review of the record, the Court finds that there is insufficient evidence that the parties were legally divorced in Jordan. The Court hereby reaffirms its Order of August 9, 2017."

On June 13, 2019, Ali renewed his motion to dismiss Samia's petition for dissolution of marriage. Judge Hagerty held a hearing on the renewed motion as well as several other motions on November 5, 2019.[2] On November 15, she issued an order on the various motions discussed during the hearing. Regarding Ali's renewed motion to dismiss, she found:

> [Ali] contends that the parties were already legally divorced in Amman, Jordan, before he filed his Petition for Custody with this Court. This Court's Order of August 9, 2018, ruled on Ali's prior motion, dismissing the motion. The Court's finding was based, in part, on Ali's sworn statements to this Court that the parties

---

[2] A video record of this hearing was not provided in the record now before this Court.

were married as of November 2017, when he filed his Petition.

A document of divorce was issued on February 11, 2018, by the Sharia Court of Amman; however, neither party was a resident of Jordan in February 2018. Further, under Sharia Law in Jordan, the parties must [remain] separated after the husband announces his intention to divorce until the final decree is issued. In the present case, Samia denies that Ali ever made a public declaration of an intent to divorce in July 2017. She continued her "wifely" duties within the household, and Ali made sworn statements to this Court that the parties were married.

By the time the decree of divorce was issued in February 2018, Samia had already filed her Counter-Petition in this Court. Under *Martin v. Fuqua*, 539 S.W.2d 314 (Ky. 1976) this Court has appropriate jurisdiction over the parties' divorce because Samia's Counter-Petition was filed in this Court before any case for divorce was filed in a Jordanian court. It is not clear to this Court that Jordan would have jurisdiction over the divorce of two non-residents even if Ali had filed there first. The Court hereby REAFFIRMS its Order of August 9, 2018. Ali's motion to dismiss Samia's counter-petition for Dissolution of Marriage is OVERRULED.

Following the entry of this order, Ali filed a petition for a writ of mandamus in the Court of Appeals. He sought to compel Judge Hagerty to dismiss Samia's petition for dissolution of marriage. The Court of Appeals denied the writ. Ali then filed a petition for reconsideration of the denial, which the Court of Appeals also denied. He now seeks review of that denial by this Court as a matter of right.[3]

---

[3] Kentucky Rule of Civil Procedure (CR) 76.36(7)(a) ("An appeal may be taken to the Supreme Court as a matter of right from a judgment or final order in any proceeding originating in the Court of Appeals.").

Additional facts are discussed below as necessary.

## II.    ANALYSIS

It is well-established that "[t]he issuance of a writ is an extraordinary remedy that is disfavored by our jurisprudence.  We are, therefore, cautious and conservative both in entertaining petitions for and in granting such relief."[4]

When reviewing a ruling by the Court of Appeals on a petition for a writ, we utilize several standards of review.  We review its findings of fact for clear error, and its legal conclusions are reviewed de novo.[5]  "But ultimately, the decision whether or not to issue a writ of prohibition is a question of judicial discretion.  So, review of a court's decision to issue a writ is conducted under the abuse-of-discretion standard."[6]  The Court of Appeals' decision will accordingly not be disturbed absent a finding that the decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.[7]

A writ may be granted in two classes of cases.  Under the first class, the petitioner must show that "the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court."[8]  Under the second class, the petitioner must show that

---

[4] *Caldwell v. Chauvin*, 464 S.W.3d 139, 144-45 (Ky. 2015) (internal footnotes and quotations omitted).

[5] *Appalachian Racing, LLC. v. Commonwealth*, 504 S.W.3d 1, 3 (Ky. 2016).

[6] *Id.*

[7] *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

[8] *Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2004).

7

"the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise, and it usually requires a showing that great injustice and irreparable injury will result if the petition is not granted."[9]

> However, there are "special cases" within the second class that do not require a showing of great injustice and irreparable injury. In those special cases, a writ is appropriate when "a substantial miscarriage of justice" will occur if the lower court proceeds erroneously, and correction of the error is necessary "in the interest of orderly judicial administration."[10]

This Court has historically applied the "special cases" exception "in those limited situations where the action for which the writ is sought would blatantly violate the law."[11]

## A. Ali is not entitled to a writ under the first class of writ.

The Court of Appeals did not directly address whether Ali was entitled to a writ under the first class, as it believed he was only arguing under the second class. However, it did address both of the required elements of the first class of writ in an indirect manner. And, from a practical standpoint, the basis of Ali's argument is that Judge Hagerty did not have jurisdiction to allow Samia's divorce petition to proceed because the parties were already divorced in

---

[9] *Lee v. George,* 369 S.W.3d 29, 32 (Ky. 2012) (quoting *Maricle,* 150 S.W.3d at 10).

[10] *Id.* (quoting *Indep. Order of Foresters v. Chauvin,* 175 S.W.3d 610, 616 (Ky. 2005)).

[11] *Chauvin,* 175 S.W.3d at 616-17.

8

Jordan. We therefore reject Samia's argument that we should not address Ali's entitlement to a writ under the first class.[12]

Under the first class of writ Ali must demonstrate that Judge Hagerty acted outside her jurisdiction and that he has no adequate remedy by appeal. We address these elements in reverse order.

Regarding a lack of adequate remedy by appeal, Ali only asserts that "there is no adequate remedy on appeal since [he] would have to wait until the conclusion of the dissolution [action] after spending thousands of dollars on legal and related fees before having a right of appeal."[13] Ironically, this argument acknowledges that Ali does in fact have an adequate remedy by way of an appeal. The Court of Appeals noted this argument and rejected it, properly holding that "Kentucky jurisprudence is clear that 'inconvenience, expense, annoyance, and other undesirable aspects of litigation' do not satisfy the requirement to demonstrate great and irreparable injury. *Fritsch v. Caudill*, 146 S.W.3d 926, 930 (Ky. 2004). Herein, [Ali] has alleged no harm beyond that attendant to any litigation."

We agree with the Court of Appeals that Ali failed to demonstrate a lack of adequate remedy on appeal.

Ali was also required to show that Judge Hagerty was acting outside of her jurisdiction. Ali insists that Judge Hagerty did not have the authority to

---

[12] We also note that Ali argued in his petition for reconsideration of the Court of Appeals' order that it was error for it not to consider his entitlement to the writ under the first class.

[13] Appellant's brief, pg. 23.

allow Samia's petition for divorce to proceed because the parties were already divorced in Jordan. Whether the parties were actually divorced in Jordan is contested, but ultimately is of no consequence. Even assuming arguendo that Ali did in fact obtain an effective divorce decree in Jordan in July 2017, Judge Hagerty was not required to acknowledge or enforce that divorce. Ali's continued argument to the contrary evinces a fundamental misunderstanding of the Full Faith and Credit Clause[14] of the U.S. Constitution.

The Full Faith and Credit Clause states in pertinent part that "[f]ull Faith and Credit shall be given **in each State** to the public Acts, Records, and judicial Proceedings **of every other State**."[15] Thus, the Full Faith and Credit Clause requires a state to honor the laws and judicial proceedings of a sister state.[16] But, "it is well-settled that, unlike the recognition and enforcement of judgments due to sister states, a foreign country's judgments are not subject to the Full Faith and Credit Clause."[17] Therefore, even if Ali was timely granted

---

[14] U.S. Const. Amend. IV, §1.

[15] *Id.* (emphasis added).

[16] Unless of course certain exceptions are applicable. *See, e.g.*, *V.L. v. E.L.*, 136 S. Ct. 1017, 1020, 194 L. Ed. 2d 92 (2016) ("A State is not required, however, to afford full faith and credit to a judgment rendered by a court that 'did not have jurisdiction over the subject matter or the relevant parties.'").

[17] *Taveras v. Taveraz*, 477 F.3d 767, 783 (6th Cir. 2007) (citing *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 322 n. 4, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981) (Stevens, J., concurring) ("The Full Faith and Credit Clause, of course, was inapplicable...because the law of a foreign nation, rather than of a sister State, was at issue[.]")). *See also*, *DeGuelle v. Camilli*, 724 F.3d 933, 938 (7th Cir. 2013) ("The full faith and credit clause does not obligate states to respect foreign judgments beyond what comity requires."), *Society of Lloyd's v. Reinhart*, 402 F.3d 982, 993 (10th Cir. 2005) ("While the Full Faith and Credit Clause applies to the recognition and enforcement of judgments among sister states, it does not apply to judgments rendered in foreign countries.").

an effective divorce decree in Jordan, Judge Hagerty was not required to honor it.

Rather, decrees of a foreign nation are entitled only to a consideration of comity.

> International comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or other persons who are under the protection of its laws."[18]

"Comity is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other."[19]  It "can serve as a discretionary basis for a court to determine whether a foreign country court's judgment should be given preclusive effect."[20]  Therefore, whether to grant comity to the Jordanian divorce decree was appropriately within Judge Hagerty's discretion.

The Court of Appeals correctly addressed these principles in its order denying Ali's writ petition.  The order states:

> The facts below are highly contested; however, even assuming the validity of [Ali's] statement of the facts, he has offered no Kentucky authority to support his proposition that a Kentucky court must wholesale adopt a foreign divorce decree without allowing any review or collateral attack thereof.  This is not a decree of a sister state, which if validly entered, Kentucky is required to enforce under full faith and credit.  U.S. Const. [Amend.] IV, §1.  Instead, as a foreign decree, the principles of comity provide that Kentucky *may* adopt the judgment "not as a matter of obligation, but

---

[18] *Chavez v. Carranza*, 559 F.3d 486, 495 (6th Cir. 2009) (quoting *Hilton v. Guyot*, 159 U.S. 113, 164, 16 S.Ct. 139, 40 L.Ed. 95 (1895)).

[19] *Taveras*, 477 F.3d at 783.

[20] *Id.*

11

out of deference and respect." *O'Bryan v. Hedgespeth*, 892 S.W.2d 571, 577 (Ky. 1995).

Therefore, contrary to Ali's argument, whether the Jordanian divorce decree was effective had no bearing on whether Judge Hagerty was acting within her jurisdiction. If the decree was not effective, she had jurisdiction over the parties as neither dispute that they resided in Jefferson County for 180 days prior to the filing of the petition.[21] If it was effective, she was still acting within her jurisdiction if she declined to extend comity to it.

Whether the foreign divorce decree was actually effective is not an issue now before us. Likewise, whether Judge Hagerty abused her discretion in declining to extend comity to it is also not before us. We are tasked only with deciding if the Court of Appeals abused its discretion by denying Ali's petition for a writ of mandamus. Based on the foregoing, we hold that the Court of Appeals did not err in denying the writ under the first writ class.

**B.     Ali is not entitled to a writ under the second class of writ.**

Under the second class of writ, Ali must show that Judge Hagerty acted erroneously, though within her jurisdiction; that there exists no adequate remedy by appeal; and that he will suffer a great injustice and irreparable injury if the petition is not granted, or, in the alternative, that a substantial miscarriage of justice will occur if the lower court is permitted to proceed and therefore granting the writ is necessary in the interest of orderly judicial administration.

---

[21] *See* Kentucky Revised Statute (KRS) 403.140(1)(a).

With regard to the first required showing, Ali argues that Judge Hagerty acted erroneously because she "refused to give full faith and credit to the parties' Jordanian divorce."[22]  But, again, decrees of a foreign nation are not entitled to full faith and credit.  Judge Hagerty therefore did not act erroneously by failing to give full faith and credit to the foreign divorce decree.  And, as previously discussed, this was correctly addressed by the Court of Appeals in its order denying the writ petition.

Ali has also failed to prove both a lack of adequate remedy by appeal and that he will suffer great harm and irreparable injury if the writ is not granted.  His only argument with regard to these elements is that "there is no adequate remedy on appeal since [he] would have to wait until the conclusion of the dissolution [action] after spending thousands of dollars on legal and related fees before having a right of appeal"[23] and that he "is being forced to defend the Counter Petition for Dissolution of Marriage, at a cost of thousands of dollars, despite the fact the parties' marriage is already dissolved."[24]

These arguments do not demonstrate that Ali does not have an adequate remedy by way of appeal.  There is no reason he cannot raise his arguments again once the divorce proceedings have concluded.  Further, "the delay incident to litigation and appeal by litigants who may be financially distressed cannot be considered as unjust, does not constitute irreparable injury, and is

---

[22] Appellant's brief, pg. 23.

[23] *Id.*

[24] Appellant's brief, pg. 4.

not a miscarriage of justice."[25]  The Court of Appeals correctly addressed these arguments as well.

Finally, Ali asserts that the Court of Appeals erred by failing to apply the "special case exception" to this case.  As the Court of Appeals correctly noted, we generally only apply the special case exception "in those limited situations where the action for which the writ is sought would blatantly violate the law."[26]

Here, the action taken by Judge Hagerty was allowing Samia to proceed on her divorce petition.  Judge Hagerty noted that Ali made several filings in her court that acknowledged the parties were married, and that he only made statements to the contrary after Samia filed her counter petition for dissolution of marriage.  Judge Hagerty also expressed well-founded doubt about whether the Jordanian court would have jurisdiction over the parties' divorce, given that neither are residents of Jordan.  And, she noted that according to Samia the parties continued to live together as husband and wife during what would have been the Idda period under Ali's purported version of the facts.  Finally, even if the Jordanian divorce decree was enforceable, she was bound by no law to honor it; she only had to consider whether to extend comity to it.  Therefore, nothing about her actions in this case was a violation of the law, blatant or otherwise.

---

[25] *Chauvin*, 175 S.W.3d at 616 (quoting *Ison v. Bradley*, 333 S.W.2d 784, 786 (Ky. 1960)).  *See also, e.g., Fritsch v. Caudill*, 146 S.W.3d 926, 930 (Ky. 2004) ("As to great and irreparable injury, we see none.  Inconvenience, expense, annoyance, and other undesirable aspects of litigation may be present, but great and irreparable injury is not.").

[26] *Id.* at 616-17.

Accordingly, based on the foregoing, the Court of Appeals did not abuse its discretion by denying Ali's petition for a writ of mandamus under the second class of writ.

### III. CONCLUSION

The order of the Court of Appeals denying Ali's petition for a writ of mandamus is affirmed. We remand this case to the Jefferson Circuit Court for further proceedings.

All sitting. All concur.

COUNSEL FOR APPELLANT:

David Bradley Mour
Louisville, Kentucky

COUNSEL FOR APPELLEE:

Hon. Tara W. Hagerty

COUNSEL FOR APPELLEE/REAL PARTY IN INTEREST:

Michael Jason Lawrence
Lawrence & Lawrence, PLLC