Hubbard LAMPTON, Appellant,

v.

Eula BOLEY, Appellee.

No. 90–CA–002759–MR.

Court of Appeals of Kentucky.

July 23, 1993.

Rehearing Denied Sept. 24, 1993.

Discretionary Review Denied by Supreme Court March 16, 1994.

J. Warren Bruenderman, William B. Wells, Clements & Hurley, P.S.C., Louisville, for appellant.

Michael L. Stevens, Reford H. Coleman, Elizabethtown, for appellee.

Before HOWERTON, STUMBO, and WILHOIT, JJ.

STUMBO, Judge.

This appeal arises from an action filed by appellee, Eula Boley (hereinafter "Boley"), to recover property damage to her automobile caused by appellant, Hubbard Lampton (hereinafter "Lampton"). The Grayson Circuit Court entered judgment in favor of Boley. After reviewing the record and the law, we affirm.

The facts of this case are not in dispute. Lampton conceded below that he was at fault in a motor vehicle accident which caused a loss of $9,000 in fair market value to an automobile owned by Boley. However, Lampton stipulated his liability only after the trial court had denied his motion to dismiss the action due to the failure of Boley's insurance carrier to intervene in the action. In support of his motion, Lampton asserted that Boley was not the real party in interest under CR 17.01 because she had entered into a loan agreement with her insurance carrier in the amount of $10,500 prior to filing suit, thereby receiving full compensation for her loss.

■ The first issue we must consider is whether Lampton's motion to dismiss should have been sustained. In that regard, we note that the record certified on appeal contains no proof that Boley is not the real party in interest. *See* CR 17.01. Specifically, the loan agreement is not in the record, nor is there any proof that Boley has received any money from her insurance carrier.[1] As a result, on the record, the trial court was correct in overruling the motion to dismiss. Thus, the trial court's judgment must also be affirmed since Lampton stipulated liability and damages.

■ Despite our decision to affirm the judgment, which resolves the appeal, we are compelled to comment upon the real issue in this case. The real issue is whether Boley's insurance carrier is governed by KRS 411.-188, which provides as follows:

---

1. We are aware of the loan agreement, and Boley's admission of receipt of $10,500 from her insurance carrier, because the loan agreement and her response to Lampton's requests for admissions were attached to Lampton's motion to certify additional items. However, since the motion to certify additional record was properly denied, we may not consider the loan agreement nor Boley's admission.

(1) This section shall apply to all actions for damages, whether in contract or tort, commenced after July 15, 1988.

(2) At the commencement of an action seeking to recover damages, it shall be the duty of the plaintiff or his attorney to notify, by certified mail, those parties believed by him to hold subrogation rights to any award received by the plaintiff as a result of the action. The notification shall state that a failure to assert subrogration [sic] rights by intervention, pursuant to Kentucky Civil Rule 24, will result in a loss of those rights with respect to any final award received by the plaintiff as a result of the action.

(3) Collateral source payments, except life insurance, the value of any premiums paid by or on behalf of the plaintiff for same, and known subrogation rights shall be an admissible fact in any civil trial.

(4) A certified list of the parties notified pursuant to subsection (2) of this section shall also be filed with the clerk of the court at the commencement of the action.

This claim was filed after July 15, 1988. Boley concedes that this statute may have abolished the collateral source rule, thus making the existence of insurance coverage, other than life insurance, an admissible fact in any civil trial. However, Boley contends that KRS 411.188 does not apply to her because she is proceeding under a loan agreement pursuant to *Ratcliff v. Smith*, Ky., 298 S.W.2d 18 (1957), thereby removing the need for the insurance carrier to intervene. We disagree, since the rationale of *Ratcliff* has been undermined by KRS 411.188.

In explaining the rationale behind allowing the loan agreement fiction in subrogation actions, the *Ratcliff* court stated as follows:

"While it is clear that the difference between a loan of the type under consideration and an absolute payment is mere fiction, that ground alone is insufficient to declare the transaction a nullity. Rather, we will look to the purpose of the fiction created by the parties to the transaction. It is clear the purpose of the loan agreement was to insulate Continental from a prejudice which juries frequently apply against insurance companies. Our courts

have long been aware of this prejudice, as exemplified by our decisions in personal injury cases where the element of insurance has been improperly injected.

"The purpose of our trial procedure is to secure justice in each case. There is no room in our system of jurisprudence for the operation of prejudices, whether they be against insurance companies, manufacturers, or in favor of homeless children. Hence, we cannot say an agreement which is intended to avoid the operation of an undue prejudice is against public policy * * *."

*Ratcliff,* 298 S.W.2d, at 20, quoting *Aetna Freight Lines v. R.C. Tway Company,* Ky., 298 S.W.2d 293, 296 (1956),

By enacting KRS 411.188(3), the legislature determined that juries should be apprised of the existence of collateral source payments and known subrogation rights (*i.e.,* insurance). Since the only statutory exception is for life insurance, the legislature did not intend there to be any other exceptions. *See, Smith v. Wedding,* Ky., 303 S.W.2d 322, 323 (1957). Thus, the statute covers all types of insurance, including comprehensive automobile insurance (which we presume would be the coverage under which Boley was paid), except for life insurance. As a result, Boley's insurance company is within the scope of KRS 411.188.

■ Since the legislature has mandated disclosure of collateral source payments and known subrogation rights, it has decided that disclosure of insurance will not be deemed prejudicial *per se.* Consequently, the rationale supporting *Ratcliff* has been eliminated. Since it is deemed there is no prejudice, we find that, as a matter of law, public policy no longer requires the sanctioning of the loan agreement procedure in cases not involving life insurance payments.

Moreover, a reading of the plain language of the text of the statute itself supports our ruling. KRS 411.188 sets forth a comprehensive set of rules governing the prosecution of subrogation actions. KRS 411.188(1) makes it clear that this statute is applicable to *all*

actions seeking damages in contract or tort. If the legislature had not intended to abolish the loan agreement procedure, KRS 411.-188(2), which provides that the plaintiff or his attorney must notify, by certified mail, any party believed to hold subrogation rights and that the failure of such a party to intervene in the action will result in a loss of any subrogation rights, would have been unnecessary. Further, were we to rule otherwise, plaintiffs proceeding under loan agreements could claim that the admission of collateral source information under KRS 411.188(3) would be prejudicial, thus rendering that section almost meaningless. We refuse to superimpose such tortured constructions upon the clear intent of the legislature.

■ Having determined that the statute is generally applicable to Boley's insurance carrier, we will consider how it impacts this case. Initially, we note that the record does not establish strict compliance with KRS 411.188(2), since there is no indication that Boley ever notified her carrier as required. However, given the prosecution of this case, it is apparent that Boley's insurance carrier is aware of this action and its subrogation rights. Likewise, although there was no strict compliance with KRS 411.188(4), it is obvious that Lampton is also aware of the subrogation rights, since he moved to dismiss based upon CR 17.01. Thus, the purpose of subsection four (4) has also been served. Therefore, we conclude that all parties are sufficiently aware of KRS 411.188 to not foreclose its application to this case. Since Boley's insurance carrier is bound by KRS 411.188, and it has not intervened, we must conclude that it has lost its subrogation rights.

As a final note, we expressly do not reach any question of Boley's contractual obligations to her insurance carrier under the loan agreement, because the agreement and the insurance carrier are not before this Court. Those questions are for another court, and another day.

For the reasons set forth above, we affirm the judgment of the Grayson Circuit Court.

HOWERTON, J., concurs.

WILHOIT, J., concurs in result and files a separate opinion.

WILHOIT, Judge, concurring.

I concur in the result reached by the majority, but have some problem with its view that somehow KRS 411.188 has made loan agreements contrary to public policy, while at the same time an insurance company may still be able to enforce such a contract. Of course, if a contract is in contravention of public policy, it is not enforceable.

The long-standing public policy in Kentucky has been that the right of citizens freely to enter into contracts is an important liberty interest which will be protected in the absence of some overriding public interest expressed in public policy. I find nothing in KRS 411.188 expressing a legislative intent to prohibit loan agreement contracts and cannot think why it would bother to do so. What I do find is that the term "collateral source payments" as used in subsection 3 of that statute is intended to embrace payments made under a loan agreement.

Having said all of this, I suppose that since both the majority's and my comments regarding loan agreements are unnecessary to the decision here, we are writing only dicta which are authority for nothing. The appellate courts of Kentucky seem to regard writing dicta as the newest rage in fashion. Only because these same courts have a penchant for making dictum "sticktum," or perhaps for being unwilling to acknowledge the difference, do I write. As any good common lawyer would know, however, I shouldn't, and we shouldn't.