**McCORMACK BARON & ASSOCIATES and Zurich Insurance Company, Appellants,**

v.

**Vivian TRUDEAUX, Appellee.**

**No. 93–CA–0804–MR.**

Court of Appeals of Kentucky.

Oct. 28, 1994.

George R. Carter, William P. Swain, Louisville, for appellants.

Vivian Trudeaux, pro se.

Before COMBS, SCHRODER and WILHOIT, JJ.

COMBS, Judge.

This is an appeal from a judgment entered by the Jefferson Circuit Court in a property damage action. Appellants contend that the trial court erred in deducting payments made by the plaintiff's insurer from the total damages awarded. We disagree and affirm the order of the Circuit Court.

The action which gave rise to this appeal arose from a fire loss. The plaintiff, Appellant McCormack Baron & Associates (Baron), was the landlord who leased an apartment to the defendant, Vivian Trudeaux. Under the terms of Section 17(c) of the residential lease, the defendant was liable for damages caused by fire. A fire and resulting loss occurred on January 30, 1991, and on January 30, 1992 Baron filed suit, seeking $12,847.18, the amount of the loss sustained.

Baron's insurer, Appellant Zurich Insurance Company (Zurich), held subrogation rights to that portion of any award received by the plaintiff representing its coverage of the loss. However, Baron failed to comply with KRS 411.188 by neglecting to deliver written notice of the suit and advising Zurich that failure to intervene in the action would result in a loss of subrogation rights with respect to any final award received by Baron.

While Zurich admits that it had actual knowledge of the suit, it did not intervene. Apparently, it failed to act because it was under the impression that its intervention was unnecessary.

Trudeaux filed her Answer on April 22, 1992, simply denying that she was liable to the plaintiff for the loss and asserting no affirmative defenses. The matter was tried before the Jefferson Circuit Court on February 16, 1993. Baron called the property's business manager, Ms. Tracey Long, to testify. During her testimony, Circuit Judge John W. Potter asked Ms. Long whether the loss had been covered by insurance. She responded that it had. Zurich had covered the amount of the loss above Baron's $5,000.00 deductible.

After hearing the evidence, the trial court entered its Opinion, finding Trudeaux liable for the loss under the lease agreement. Baron was awarded $5,000.00. Judge Potter explained that KRS 411.188(3) now permitted the trier of fact to consider collateral source payments and known subrogation rights in determining damages. He noted that he had awarded only the amount of the loss which Baron had sustained because there was no evidence in the record to indicate that any third party was entitled to subrogation of the award received by Baron.

The trial court entered its Findings of Fact, Conclusions of Law and Judgment on February 16, 1993, and, on February 24, 1993, Zurich asked leave to intervene pursuant to Ky.R.Civ.P. 24. The court denied this motion. The court also overruled a companion motion filed by Baron to vacate the judgment.

On appeal, Appellants contend that the trial court improperly applied KRS 411.188 to limit Baron's recovery of damages, or in the alternative, that the trial judge abused his discretion by refusing to allow Zurich to intervene in the action. More specifically, Appellants argue that the trial court's construction and application of KRS 411.188 impermissibly impairs Zurich's access to the courts and its right of contract; that the application of KRS 411.188 was not raised by the defendant and was, therefore, waived, and that the trial court erred in failing to give Zurich an opportunity to intervene and pursue its claim. We disagree.

KRS 411.188 was enacted as part of the omnibus "tort reform" legislation enacted by the Commonwealth in 1988, *Ohio Casualty Ins. Co. v. Ruschell*, Ky., 834 S.W.2d 166 (1992); *Zurich Am. Ins. Co. v. Haile*, Ky., 882 S.W.2d 681 (1994), and provides in pertinent part, as follows:

> (2) At the commencement of an action seeking to recover damages, it shall be the duty of the plaintiff or his attorney to notify, by certified mail, those parties believed by him to hold subrogation rights to any award received by the plaintiff as a result of the action. The notification shall state that a failure to assert subrogation rights by intervention ... will result in a loss of those rights with respect to any final award received by the plaintiff as a result of the action.
>
> (3) Collateral source payments, except life insurance, the value of any premiums paid by or on behalf of the plaintiff for same, and known subrogation rights shall be an admissible fact in any civil trial.

"The plain purpose of this legislation was to restrict the impact of the collateral source rule...."[1] *Ohio Casualty*, at 170. That rule provides that "a defendant must bear the full cost of the injury he caused the plaintiff, regardless of any compensation the plaintiff receives from an independent or 'collateral' source." Daena A. Goldsmith, *A Survey of the Collateral Source Rule: The Effects of Tort Reform and Impact on Multistate Litigation*, 53 J.Air L. & Com. 799 (1988). "[T]here are two consequences of the collateral source rule. One is substantive

---

**1.** The 1980's ushered in an era of nation-wide tort reform efforts. By 1988, over half of state legislatures had modified or abrogated the collateral source rule. Daena A. Goldsmith, *A Survey of the Collateral Source Rule: The Effects of Tort Reform and Impact on Multistate Litigation*, 53 J.Air L. & Com. 799 (1988). "The Kentucky legislation in this regard is a restrained response. Other states have enacted more radical approaches that more severely impact a plaintiff's recovery.... The new Kentucky rule is similar in operation and effect to the Georgia rule." Robert R. Sparks, *A Survey of Kentucky Tort Reform*, 17 N.Ky.L.Rev. 473 (1990).

and provides that damages are not reduced by the amount of collateral benefits plaintiff receives. The other consequence of the rule is evidentiary in effect. Because of the substantive consequence of the rule, evidence of collateral benefits is not generally material." *Polito v. Holland,* 258 Ga. 54, 365 S.E.2d 273 (1988).

The 1988 legislative reform, aimed at eroding the collateral source rule, rendered evidence of collateral benefits and the existence of subrogated benefits admissible in tort and contract actions commenced after July 15, 1988. Robert R. Sparks, *A Survey of Kentucky Tort Reform,* 17 N.Ky.L.Rev. 473 (1990). By necessary implication, the reform permits fact-finders to consider the plaintiff's receipt of collateral benefits and to decide to reduce the damages awarded accordingly. *Edwards v. Land,* Ky.App., 851 S.W.2d 484 (1992).

This is a synopsis of the evolution of the collateral source rule in reference to which we now address Appellants' arguments. Appellants contend that the Circuit Court erred in its interpretation of KRS 411.188. They note that KRS 411.188 does not address assignment rights between a plaintiff and its insurer and contend that the trial court erred in insisting upon Zurich's intervention under CR 24. Appellants maintain that an insurance carrier should be free to pay its insured and rely upon its subrogation agreement as its method of enforcing its contractual subrogation rights. Appellants cite *Louisville & N.R. Co. v. Mack Mfg. Corp.,* Ky., 269 S.W.2d 707 (1954), and explain that while Zurich was on actual notice of the suit, it had elected to pursue the suit in the name of its insured—"a proper and well-recognized practice within this Commonwealth." Therefore, they argue, the fact-finder should not have considered any collateral source payments in deciding the defendant's liability for the fire loss.

The statutory scheme, skeletal though it may be, prevents an insurer from remaining hidden from the fact-finder's view when the insurer intends to benefit from a suit instituted against a tort-feasor. This is a fundamental tenet of the reform efforts. We fail to see how this legislation works to diminish Zurich's access to the courts. By statute, it is entitled to notice of the impending suit and is advised of the consequences of failing to participate in the action. KRS 411.188(2). Further, *Zurich, supra,* has clearly and recently stated that an insurer's duty under this statute simply involves a motion to intervene with a notice of payments made and does not impose an onerous obligation to litigate the merits of that claim.

As for Zurich's contention regarding the effect of the assignment of rights and its intention to pursue the action through its insured, we simply note that Zurich's preferences with regard to how the action will be prosecuted must yield to the legislature's directives. *Edwards, supra. See also, Lampton v. Boley,* Ky.App., 870 S.W.2d 428 (1993).

Given this statutory scheme, one who holds subrogation rights can preserve those rights only by acting affirmatively to announce its intention to be compensated. While Judge Potter, as fact-finder, was not compelled to reduce the damage award to Baron after learning of its receipt of collateral benefits, finding nothing in the record to suggest that any entity held subrogation rights to the award, he was certainly permitted to do so.

Next, Appellant argues that the trial court abused its discretion by improperly denying Zurich the right to intervene and assert its claim. Appellant maintains that the issue of "real party in interest" had never been raised by the defendant and, therefore, had effectively been waived. The statutory reform, however, does not require a defendant to request that the real party in interest be substituted for the plaintiff. Rather, the burden to act to protect one's rights falls upon the party holding subrogation rights. Zurich's motion to intervene was clearly filed out of time as the judgment had already been rendered.

For the foregoing reasons, we affirm the judgment of the Jefferson Circuit Court.

All concur.