Robert SCHWARTZ, Appellant,

v.

Billy HASTY and Kentucky Farm Bureau Mutual Insurance Company, Appellees.

No. 2003–CA–000796–MR.

Court of Appeals of Kentucky.

Feb. 11, 2005.

Discretionary Review Denied by Supreme Court Nov. 16, 2005.

---

**15.** 770 S.W.2d 225 (Ky.1989).

**16.** KRS 383.695.

**17.** KRS 383.695.

Don A. Pisacano, Lexington, KY, for appellant.

Guy R. Colson, Casey C. Stansbury, Lexington, KY, for appellee, Kentucky Farm Bureau.

Before BUCKINGHAM, DYCHE, and TAYLOR, Judges.

## OPINION

BUCKINGHAM, Judge.

Robert Schwartz appeals from an order of the Garrard Circuit Court holding that the underinsured motorist (UIM) benefits received by him were not subject to the collateral source rule and could be credited against the tort damages awarded to him in determining the damages recoverable from Billy Hasty, the tortfeasor. This is apparently an issue of first impression in Kentucky law. We reverse and remand.

On May 29, 2000, Schwartz was severely injured in a vehicular accident when a car driven by Hasty made a left turn into a driveway in front of him. Hasty had vehicle liability insurance coverage through a policy with Kentucky Farm Bureau Mutual Insurance Company (Farm Bureau). As the policy related to this accident, the liability limit was $100,000. Schwartz had two vehicle liability insurance policies, one with State Farm Insurance Company (State Farm) on his truck and the other with Progressive Northern Insurance Company (Progressive) on his motorcycle. As the policies were applicable to this accident, the State Farm policy had UIM coverage for $100,000 and the Progressive policy had UIM coverage for $25,000.

Schwartz filed a personal injury tort complaint against Hasty in the Garrard Circuit Court, seeking damages suffered as a result of the accident. Hasty filed an answer and counterclaim alleging contributory negligence. Schwartz later filed an amended complaint that added Farm Bureau, State Farm, and Progressive as parties. The amended complaint included a new claim of bad faith against Farm Bureau.

After conducting discovery, Farm Bureau, State Farm, and Progressive each elected not to participate in the trial. Schwartz and Farm Bureau also entered into an agreed order bifurcating the proceeding by first trying the original personal injury tort claim and reserving the bad faith settlement tort claim until resolution of the injury claim. Schwartz filed a pretrial motion asking the court to exclude any evidence of collateral source payments, and the court granted the motion.

The case was tried before a jury, and the jury found both parties contributorily negligent with Hasty 80% at fault and Schwartz 20% at fault. The jury found total damages of $248,313. Consistent with the jury's verdict assessing contributory fault, the trial court entered a judgment in favor of Schwartz for $198,650.40 plus costs and interest. Hasty then filed a notice of appeal of the trial court's judgment.[1]

After Hasty filed a notice of appeal, Schwartz settled his claims against both of the UIM carriers. He recovered the policy limit of $25,000 from Progressive and also recovered $78,614.27 from State Farm.[2] Schwartz subsequently filed a notice to take Hasty's deposition to inquire as to his financial assets in order to facilitate collection on the judgment.

In January 2003 Schwartz, Hasty, and Farm Bureau entered into a partial settlement whereby Farm Bureau paid Schwartz $160,000, $100,000 of which was related to Hasty's liability insurance coverage and $60,000 of which was related to Schwartz's bad faith claim against Farm Bureau. In return, Schwartz released and discharged Hasty and Farm Bureau from all actions or claims that arose from the accident. Schwartz also agreed to indemnify and hold Hasty harmless for any potential claim of Progressive for indemnity against Hasty for its payment of UIM benefits to Schwartz.[3] The settlement agreement, however, stated that the parties disagreed as to the effect of the UIM payments, and it reserved the issue of

---

1. The trial court indefinitely postponed setting a trial date on Schwartz's bad faith settlement claim against Farm Bureau.

2. These amounts represented the amount of the judgment exceeding $100,000, including costs and interest.

3. State Farm had earlier been dismissed from the case following its payment of $78,614.27 to Schwartz. It apparently agreed not to exercise its subrogation rights.

whether these payments would offset the jury's verdict as collateral source payments. Farm Bureau agreed to be responsible for any additional payments to satisfy the judgment should resolution of this issue so require.

Consistent with the settlement agreement, Farm Bureau filed a motion for order of satisfaction, seeking resolution of the reserved issue. Farm Bureau argued that KRS [4] 304.39–320 limited Schwartz to recovery of an amount equal to the jury's verdict reduced by UIM payments. Farm Bureau asserted that the UIM payments did not fall within the collateral source rule. Schwartz filed a response to the motion, maintaining that UIM benefits do constitute collateral source payments and that KRS 304.39–320 did not apply to Farm Bureau.

Meanwhile, Progressive filed a motion for declaratory judgment, seeking indemnification from Hasty for the $25,000 it paid to Schwartz under its UIM policy based on its subrogation rights recognized in KRS 304.39–320(4). Hasty responded that Progressive was required to file a separate action on its subrogation claim rather than utilize a summary proceeding. The trial court summarily denied Progressive's motion.

On March 26, 2003, the trial court entered an order of satisfaction in favor of Farm Bureau. The order relieved Farm Bureau of any further obligation on the judgment, holding that Hasty was entitled to a credit or setoff against the amount in the jury verdict due to the UIM payments made by State Farm and Progressive. The court stated it could find nothing in KRS 304.39–320 to indicate an intent to allow an injured party to receive a double recovery. Schwartz has brought this appeal from the order of satisfaction.

■ Schwartz contends that the trial court erred by failing to apply the collateral source rule to deny Hasty a credit for the UIM payments by State Farm and Progressive. Farm Bureau maintains that the court correctly held that the collateral source rule did not apply and that the rule was inconsistent with KRS 304.39–320. The applicability of the collateral source rule is a matter of law subject to our independent review. *See, e.g., Weatherly v. Flournoy,* 929 P.2d 296, 298 (Okla.Ct. App.1996); *Paulson v. Allstate Ins. Co.,* 263 Wis.2d 520, 665 N.W.2d 744, 749 (2003). Similarly, the interpretation of a statute is a legal issue subject to de novo or independent review. *See Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth, Transp. Cabinet,* 983 S.W.2d 488, 490–91 (Ky.1998).

■ Farm Bureau's major contention is that denying Hasty a credit or setoff for the UIM payments received by Schwartz would allow Schwartz to receive a double recovery. A general goal of compensatory damages in tort cases is to put the victim in the same position he would have been prior to the injury or make him whole to the extent that it is possible to measure his injury in terms of money. *See, e.g., Kentucky Cent. Ins. Co. v. Schneider,* 15 S.W.3d 373, 374 (Ky.2000); *Paducah Area Pub. Library v. Terry,* 655 S.W.2d 19, 23 (Ky.App.1983); 22 AM.JUR.2D *Damages* § 27 (2003). As a result, an injured party typically cannot receive more than one recovery as compensation for the same harm or element of loss. *See Morrison v. Kentucky Cent. Ins. Co.,* 731 S.W.2d 822, 825 (Ky.App.1987). However, the collateral source rule is an exception to the rule against double recovery. *See Hardaway Management Co. v. Southerland,* 977 S.W.2d 910, 918 (Ky.1998).

4. Kentucky Revised Statutes.

■ The collateral source rule provides that benefits received by an injured party for his injuries from a source wholly independent of, and collateral to, the tortfeasor will not be deducted from or diminish the damages otherwise recoverable from the tortfeasor. *See, e.g.,* 22 AM.JUR.2D *Damages* § 392 (2003); BLACK'S LAW DICTIONARY 254 (7th ed.1999); *Restatement (Second) of Torts* § 920A(2) (1979). The collateral source rule has been long recognized in Kentucky. *See Louisville & N.R. Co. v. Carothers,* 65 S.W. 833, 834 (Ky.1901); *McFarland v. Bruening,* 299 Ky. 267, 185 S.W.2d 247, 249 (1945); *Barr v. Searcy,* 280 Ky. 535, 133 S.W.2d 714, 715 (1939). In *Taylor v. Jennison,* 335 S.W.2d 902 (Ky.1960), the court stated:

> The general rule recognized in other jurisdictions is that damages recoverable for a wrong are not diminished by the fact that the injured party has been wholly or partly indemnified for his loss by insurance (to whose procurement the wrongdoer did not contribute). We are convinced this rule is sound, particularly since there is no logical or legal reason why a wrongdoer should receive the benefit of insurance obtained by the injured party for his own protection. It is a collateral contractual arrangement which has no bearing upon the extent of liability of the wrongdoer. [Citations omitted.]

*Id.* at 903.

Various justifications have been presented in support of the rule. First, the wrongdoer should not receive a benefit by being relieved of payment for damages because the injured party had the foresight to obtain insurance. *See Taylor,* 335 S.W.2d at 903; *O'Bryan v. Hedgespeth,* 892 S.W.2d 571, 576 (Ky.1995). Second, as between the injured party and the tortfeasor, any so-called windfall by allowing a double recovery should accrue to the less culpable injured party rather than relieving the tortfeasor of full responsibility for his wrongdoing. *See Johnson v. Beane,* 541 Pa. 449, 664 A.2d 96, 100 (1995); *Bozeman v. State,* 879 So.2d 692, 703 (La.2004); 22 AM.JUR.2D *Damages* § 392 (2003). Third, unless the tortfeasor is required to pay the full extent of the damages caused, the deterrent purposes of tort liability will be undermined. *See Restatement (Second) of Torts* § 901(c) (1979); *Ellsworth v. Schelbrock,* 235 Wis.2d 678, 611 N.W.2d 764, 767 (2000).

■ Another issue often raised with the collateral source rule involves subrogation. Especially with automobile insurance coverage, insurers have an equitable, contractual, or statutory right of subrogation in the benefits paid to the insured. *See, e.g., Wine v. Globe Am. Cas. Co.,* 917 S.W.2d 558 (Ky.1996). Subrogation is designed to prevent unjust enrichment by requiring one who benefits from the payment of the debt of another to ultimately pay it themselves. *Id.* at 561. In the context of automobile insurance, the doctrine of subrogation serves dual purposes to prevent double recovery by the insured and to prevent a windfall to the tortfeasor. *Id.* at 562. While the legislature deleted a provision in KRS 304.39–320 explicitly providing for statutory subrogation for UIM benefits, the Kentucky Supreme Court has recognized insurers' equitable and contractual right to subrogation. *See Coots v. Allstate Ins. Co.,* 853 S.W.2d 895, 901 (Ky. 1993).

■ While the double recovery aspect of the collateral source rule and subrogation may appear at first to clash, the two doctrines are compatible. The collateral source rule and the principles of subrogation work in tandem by ensuring that the tortfeasor bears the ultimate responsibility for payment of damages without diminishment for benefits received by the injured

party from collateral sources, while preventing double recovery by the injured party where the party providing the collateral source benefits seeks reimbursement through subrogation. *See Koffman v. Leichtfuss*, 246 Wis.2d 31, 630 N.W.2d 201, 211 (2001). In effect, the collateral source rule addresses the relationship between the injured party and the tortfeasor, and subrogation focuses more on the relationship between the injured party/insured and the insurer, with the subrogee obtaining the rights of the injured party against the tortfeasor to the extent of its payments.

■ The existence of collateral source payments to the injured party is irrelevant to the issue of "the amount of damages the plaintiff has incurred and is entitled to recover from the wrongdoer in the civil action, nor does it matter that the source of the collateral source benefits may be entitled to reimbursement from the recovery because of contractual or statutory subrogation rights." *O'Bryan*, 892 S.W.2d at 576. Similarly, any agreements concerning subrogation rights between the insured and insurer are of no consequence or concern of the tortfeasor except to avoid his subjection to double recovery exceeding the amount of tort damages. *See, e.g., Beaird v. Brown*, 58 Ill.App.3d 18, 15 Ill. Dec. 583, 373 N.E.2d 1055, 1058, (1978); *Dippel v. Hunt*, 517 P.2d 444, 448 (Okla.Ct. App.1973); *Southard v. Lira*, 212 Kan. 763, 512 P.2d 409, 414 (1973).

Farm Bureau contends that the collateral source rule does not apply to UIM coverage. It asserts that unlike certain other types of collateral sources, such as health and disability insurance, that are payable regardless of fault, UIM benefits are payable only upon a determination of fault by a tortfeasor and evaluation of damages by an adjustor, mediator, or jury. Farm Bureau argues that the failure to impose an immediate obligation for payment of benefits under UIM coverage precludes their characterization as collateral source benefits.

While it is a matter of first impression in Kentucky, the majority of courts in other states have held that UIM payments fall within the collateral source rule. *See Voge v. Anderson*, 181 Wis.2d 726, 512 N.W.2d 749, 751 (1994); *Johnson by Johnson v. General Motors Corp.*, 190 W.Va. 236, 438 S.E.2d 28, 35 (1993); *Hernandez v. Gisonni*, 657 So.2d 33, 35 (Fla.Dist.Ct.App.1995); *Estate of Rattenni v. Grainger*, 298 S.C. 276, 379 S.E.2d 890 (1989); *Peele v. Gillespie*, 658 N.E.2d 954, 958 (Ind.Ct.App.1995). *But see Fertitta v. Allstate Ins. Co.*, 462 So.2d 159, 164 (La.1985).

■ The main requirement for qualification as a collateral source under the collateral source rule is that the source be "wholly independent" of the wrongdoer. *See In re W.B. Easton Constr. Co., Inc.*, 320 S.C. 90, 463 S.E.2d 317, 318 (1995). "A source is wholly independent and therefore collateral when the wrongdoer has not contributed to it and when payments to the injured party were not made on behalf of the wrongdoer." *Pustaver v. Gooden*, 350 S.C. 409, 566 S.E.2d 199, 201 (App. 2002). In *Estate of Rattenni*, the court stated, "[w]e find no persuasive reason to distinguish underinsurance proceeds from other insurance proceeds that are subject to the collateral source rule." 379 S.E.2d at 890.

The view that UIM payments are "wholly independent" of the wrongdoer is consistent with the nature of UIM coverage reflected in Kentucky case law. Kentucky courts have recognized that UIM coverage is contractual, which is separate and distinct from the tortfeasor's liability. *See, e.g., Philadelphia Indem. Ins. Co. v. Morris*, 990 S.W.2d 621, 625 (Ky.1999); *Nationwide Mut. Ins. Co. v. Hatfield*, 122

S.W.3d 36, 40 (Ky.2003). In the *Coots* case the Kentucky Supreme Court stated:

> The UIM insurer is a primary obligor for the UIM insured's loss by contractual obligation just as the tortfeasor is a primary obligor by reason of his tort obligation. Insofar as its UIM obligation is concerned, as we have stated in Part I of this Opinion, the existence of the tortfeasor, and the amount of damages caused by the tortfeasor, and the tortfeasor's insurance or lack thereof, are only relevant to measure the loss under the policy.

853 S.W.2d at 902.

▮▮▮▮ The fact that UIM coverage is based on fault does not preclude its characterization as a collateral source but is merely an aspect of its contractual terms. UIM coverage is, like uninsured motorist (UM) coverage, *"first party coverage,* which means that it is a contractual obligation directly to the insured[.]" *Id.* at 898. (Emphasis in original.) But the fact that the insurer's liability is tied to the fault of the tortfeasor does not make the tortfeasor a party to the insurance contract. *Id.*

Recognizing UIM payments as a collateral source within the collateral source rule is consistent with the purposes of the rule. While UIM coverage must be offered to policyholders, it is optional and involves a separate additional payment premium. Allowing tortfeasors a credit or setoff for UIM payments would provide an unintended benefit to the tortfeasor and relieve him of some responsibility for his actions, while depriving the injured party/insured of the benefit of his payments of premiums for the insurance. In *Burke Enterprises, Inc. v. Mitchell,* 700 S.W.2d 789 (Ky.1985), the court said:

> It is well settled that a tortfeasor is not entitled to any credit against what he owes for payments of medical expenses or disability benefits paid by a *collateral source* to the tort victim pursuant to a contractual obligation owed to the victim from the collateral source, whether it be first party insurance coverage, employment benefits, or otherwise. [Emphasis in original.]

*Id.* at 796. Thus, we agree with the majority view that UIM payments fall within the collateral source rule.

▮▮▮▮ In addition to the collateral source argument, Farm Bureau contends that KRS 304.39–320 entitles Hasty to a credit or setoff for the UIM payments by State Farm and Progressive against the jury verdict and that this statute controls over the more general common law collateral source rule. The trial court relied upon, and Farm Bureau cites to, the provision in KRS 304.39–320 which describes UIM coverage as coverage for "such uncompensated damages as [the insured] may recover on account of injury due to a motor vehicle accident because the judgment recovered against the owner of the other vehicle exceeds the liability policy limits thereon, to the extent of the underinsurance policy limits on the vehicle of the party recovering." KRS 304.39–320(2). The trial court viewed the statute and UIM coverage as a means for an injured party to obtain more complete recovery of any damages sustained because of a motor vehicle accident. It relied especially on the word "uncompensated" in concluding that "[n]othing therein indicates an intent to allow an injured party double recovery."

KRS 304.39–320 was intended to define the relationship and obligations between the injured insured and the underinsured motorist carrier as compared with the tortfeasor's liability coverage and the injured insured's total damages. The statute does not explicitly provide credits or setoffs against the tortfeasor's liability for the injured party's damages. In this context,

the word "uncompensated" necessarily refers to the amount of damages suffered by the injured party that are not compensated by the tortfeasor's liability coverage. The trial court's attempt to include UIM benefits as compensation credited against the tortfeasor's liability represents an unwarranted extension beyond the purpose and language of the statute. Moreover, such an interpretation is flawed in that it deducts the amount of UIM payments as compensated damages in deriving the amount of UIM benefits payable to the insured in the first instance. In other words, the amount of uncompensated damages must be determined before determining the amount of UIM benefits due the insured.

The statute simply does not address how UIM payments affect the tortfeasor's liability other than the recognition that the UIM insurer may have subrogation rights in a portion of the amount of damages due. If the legislature wanted to provide a credit benefiting the tortfeasor against the total damages, we conclude it would have done so with more direct, precise language.

 Even if KRS 304.39–320 explicitly or, as the court suggested, by implication provided for a credit against the underinsured motorist's liability, such a provision would be subject to constitutional challenges. The collateral source rule has two aspects: evidentiary and substantive. *See McCormack Baron & Associates v. Trudeaux,* 885 S.W.2d 708, 710–11 (Ky.App.1994). The substantive aspect concerns the above-discussed statement of the rule that damages are not reduced by the amount of collateral benefits received by the plaintiff. Given this substantive aspect, an evidentiary consequence developed that prohibited the admission of evidence of collateral benefits as being irrelevant and immaterial. *Id.*

In 1988 the legislature in Kentucky enacted KRS 411.188 as part of the omnibus tort reform legislation. *See Ohio Cas. Ins. Co. v. Ruschell,* 834 S.W.2d 166, 170 (Ky. 1992). That statute authorized the admission of evidence concerning collateral source payments, the value of any premiums paid by or on behalf of the plaintiff, and known subrogation rights in any civil trial. In the *O'Bryan* case the Kentucky Supreme Court held KRS 411.188(3) unconstitutional as violating the separation of powers doctrine. 892 S.W.2d at 578.

While KRS 411.188 directly addressed only the evidentiary aspect of the collateral source rule, the court recognized its inevitable impact on the substantive aspect of the rule as well. The court indicated that the substantive impact of the statute would violate Section 54 of the Kentucky Constitution, which prohibits legislative encroachment on compensatory damages due tort victims. *Id.* The court noted that plaintiffs' right to recover against wrongdoers for personal injuries was long-standing and constitutionally protected by the "jural rights" doctrine. *Id.* The court further stated:

> A substantive law change denying damages for medical expenses and wage loss in a civil action to those plaintiffs who have access to collateral source benefits would violate Section 54. Those plaintiffs receiving collateral source payments cannot have their tort remedy denied as punishment for their prudence in obtaining insurance coverage to assist them in the event of a catastrophe, and their misfortune compounded by making them appear to seek damages for which they have no need.

*Id.*

This analysis recognizes the fundamental difference between the tort damages recoverable from a wrongdoer and the col-

lateral benefits recovered by an insured on an insurance contract. In short, a diminution of tort damages based on receipt of collateral source benefits would violate Section 54 of the Kentucky Constitution. Consequently, the trial court's interpretation of KRS 304.39–320 as authorizing a credit or setoff of UIM payments received by Schwartz against the damages recoverable from Hasty would violate the Kentucky Constitution.

Progressive has asserted its subrogation rights with respect to the $25,000 in UIM benefits it has paid Schwartz. However, there has been no resolution of its claim due to procedural issues. Hasty is not entitled to a credit or setoff against the jury verdict for this amount, but he has an interest in not being required to pay both Schwartz and Progressive in an amount exceeding the jury verdict. Moreover, as subrogee, Progressive stands in the shoes of Schwartz and should receive the amount of its payments in place of Schwartz, the subrogor. As a result, should Progressive be determined to have valid subrogation rights, any judgment should reflect an award to it commensurate with its subrogation rights, thereby lessening the award to Schwartz. This is a matter of distribution of the jury verdict, rather than decreasing the damages amount.

On the other hand, the record indicates that State Farm has waived its subrogation rights and has been dismissed from the action. As we noted earlier, any agreement between Schwartz and State Farm is irrelevant to the obligation of Hasty to pay the full amount of the damages. Consistent with the collateral source rule, Hasty is not entitled to a credit or reduction in the judgment for the $78,614.27 paid to Schwartz by State Farm, even though it may result in a double recovery by Schwartz.

The order of the Garrard Circuit Court is reversed and remanded for further proceedings consistent with this opinion.

ALL CONCUR.